Filed: March 11, 2003

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 02-1176
(CA-01-582-MU)

Kenneth Scott Nivens, etc., et al.,

Plaintiffs - Appellants,

versus

Peter S. Gilchrist, III, etc.,

Defendant - Appellee.

O R D E R

The court amends its opinion filed February 11, 2003, as follows:

On page 2, second full paragraph, line 3 -- the sentence is corrected to end "relating to the sale of 1024 ecstasy pills."

On page 3, footnote 1 -- the footnote is corrected to read:

Appellants Nivens, Maners, and Stork were jointly assessed, respectively, $6,259.67, for the possession of 700 and the sale and possession of 184 ecstasy pills, and Maners was additionally assessed $ 1,336.33 for the sale of 184 of these ecstasy pills. Stork was additionally assessed $ 1,081.13 for the sale of another 140 ecstasy pills.

On page 14, first full paragraph, line 3 -- the citation to Younger is corrected to read "401 U.S. at 45 (holding that 'danger of irreparable loss [must be] great and immediate')[.]"

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KENNETH SCOTT NIVENS, Individually
and as representatives of a class
pursuant to Rule 23, Fed.R.Civ.P.;
GLEN LANCE MANERS, Individually
and as representatives of a class
pursuant to Rule 23, Fed.R.Civ.P.;
TERRI LYNN STORK, Individually and
as representatives of a class
pursuant to Rule 23, Fed.R.Civ.P.,           No. 02-1176
    *Plaintiffs-Appellants,*

    v.

PETER S. GILCHRIST, III, In his
official capacity as District Attorney
for the 26th Prosecutorial District
for the State of North Carolina, and
as representative of a class pursuant
to Rule 23, Fed.R.Civ.P.,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-01-582-MU)

Argued: September 24, 2002

Decided: February 11, 2003

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Motz and Judge King joined.

**COUNSEL**

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for Appellants. Norma Smithwick Harrell, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Appellants Kenneth Scott Nivens, Glen Lance Maners, and Terri Lynn Stork brought an action in the United States District Court for the Western District of North Carolina, pursuant to 42 U.S.C.A. § 1983 (West Supp. 2002) and the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202 (West 1994), to enjoin the pending state criminal drug prosecutions against them, alleging that their payment of North Carolina's drug tax was a criminal, not civil, penalty, and thus any criminal punishment imposed in their pending criminal trial will violate the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment. The district court abstained from exercising jurisdiction and intervening in the state proceedings based on *Younger v. Harris*, 401 U.S. 37 (1971), which reaffirmed the principle that a federal court "should not act to restrain a [state] criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44. The district court concluded that Appellants had not exhausted their state remedies and that they would not suffer irreparable damage if the state action was not enjoined because Appellants had yet to be subjected to a criminal prosecution. For the reasons that follow, we affirm the district court's decision to abstain.

I.

The underlying facts in this case are not in dispute. On July 8, 2000, Appellants were arrested for various violations of the North Carolina Unauthorized Substances Act relating to the sale of

2

1024 ecstasy pills. Shortly thereafter, North Carolina assessed taxes for possession of the drugs, including penalties and interest, totaling $8,677.13,[1] pursuant to North Carolina's Unauthorized Substances Tax Act, N.C. Gen. Stat. §§ 105-113.105 *et seq*. (2000).[2] Within a month or so, Appellants paid the taxes in full and without contest. Subsequently, North Carolina indicted Appellants for possession, sale, delivery, and transportation of, and conspiracy to sell and deliver, an unauthorized substance and scheduled a criminal trial for the November 5, 2001 term of the Superior Court of North Carolina.[3] On October 29, 2001, Appellants filed a motion for a temporary restraining order and a preliminary injunction in the district court to stay their trial. North Carolina voluntarily stayed Appellants' prosecution until January 2002 to allow Appellants adequate time to raise their contentions before the district court, and we issued a stay of the district court's order pending the outcome of this appeal. Because we now affirm the district court's decision to abstain from exercising jurisdiction, we lift our stay.

## II.

### A.

The sole issue on appeal is whether the district court properly abstained from exercising jurisdiction under *Younger*, thus declining to reach Appellants' Fifth Amendment claims under the Double Jeopardy Clause.[4] We review the district court's decision to abstain under

---

[1] Appellants Nivens, Maners, and Stork were jointly assessed, respectively, $6,259.67, for the possession of 700 and the sale and possession of 184 ecstasy pills, and Maners was additionally assessed $ 1,336.33 for the sale of 184 of these ecstasy pills. Stork was additionally assessed $ 1,081.13 for the sale of another 140 ecstasy pills.

[2] We refer to the Unauthorized Substances Tax Act, N.C. Gen. Stat. §§ 105-113.105 *et seq*. (2000), as North Carolina's "drug tax" throughout the opinion.

[3] Appellants named Peter S. Gilchrist, III, the District Attorney for the Twenty-Sixth Prosecutorial District of North Carolina, as Respondent in his petition. For ease of reference we refer to Gilchrist as "North Carolina" throughout the opinion.

[4] The Fifth Amendment's Double Jeopardy Clause states, "nor shall any person be subject for the same offence to be twice put in jeopardy

3

*Younger* for abuse of discretion. *Martin Marietta Corp. v. Md. Comm'n on Human Rel.*, 38 F.3d 1392, 1396 (4th Cir. 1994); *see also Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir. 1997) (noting that an error of law constitutes an abuse of discretion).

Based upon principles of federalism, the Supreme Court in *Younger* articulated the policy of comity underlying the federal courts' obligation to refrain from adjudicating the merits of federal constitutional claims in an underlying state criminal action: adjudicating such claims needlessly injects federal courts into ongoing state criminal prosecutions, undermines the state's ability to enforce its laws, and does not show "a proper respect for state functions." *Younger*, 401 U.S. at 44. The Court also recognized that federal courts acting as courts of equity in this context "should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44. Later, in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), the Court held that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Id.* at 432; *Martin Marietta Corp.*, 38 F.3d at 1396 (stating the same considerations).

---

of life or limb." U.S. Const. amend. V. The Supreme Court has recognized that the Double Jeopardy Clause protects individuals from being criminally prosecuted more than once for the same offense. *See Monge v. California*, 524 U.S. 721, 727-28 (1998). Protection from subsequent or "successive" criminal prosecutions extends to any party who has already been the subject of a criminal prosecution for the same offense, regardless of the result of the first criminal prosecution. *Id.* at 729. The Court has also concluded that the Double Jeopardy Clause protects individuals from the imposition of "multiple *criminal* punishments for the same offense," but "only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997).

All three of the circumstances identified in the *Middlesex* inquiry are present here. First, Appellants instituted this lawsuit in an effort to stop, and eventually dismiss, North Carolina's pending criminal proceedings against them. Second, North Carolina has a very important, substantial, and vital interest in preventing violations of its criminal laws. *See Younger*, 401 U.S. at 43-44; *see also Cooper v. Oklahoma*, 517 U.S. 348, 367 (1996) (noting that "the State's interest in the efficient operation of its criminal justice system" is an "important state interest[ ]"). Third, as is discussed below, *infra* at 12-17, Appellants have an adequate opportunity in the state prosecution to raise the double jeopardy claim advanced in the federal lawsuit, although they assert that it would be futile. The district court, accordingly, did not abuse its discretion in abstaining from hearing Appellants' case, unless the case falls under an exception to the general principle requiring abstention.

B.

The Supreme Court has recognized that in "extraordinary circumstances," federal courts have discretion to disregard the "strong federal policy against federal court interference with pending state judicial proceedings." *Middlesex County Ethics Comm.*, 457 U.S. at 431. In *Younger*, the Supreme Court explained the exception to this "strong federal policy":

> "[W]hen absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done, *except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate*. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. *The accused should first set up and rely on his defense in the state courts*, even though this involves a challenge of the validity of some statute, *unless it plainly appears that this course would not afford adequate protection*."

*Younger*, 401 U.S. at 44 (emphasis added) (quoting *Fenner v. Boykin*, 271 U.S. 240, 243-44 (1926)); *see also Kugler v. Helfant*, 421 U.S.

5

117, 123-24 (1975) (holding that federal equitable intervention in a state trial may be warranted upon a showing of "bad faith or harassment by state officials," "where the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions," or where "other extraordinary circumstances" exist that present the necessary threat of irreparable injury). Thus, a federal court must abstain from interfering with an ongoing state proceeding where a litigant has "an `opportunity to raise and have timely decided by a competent state tribunal the federal issues involved' and . . . no bad faith, harassment, or other exceptional circumstances dictate to the contrary." *Middlesex*, 457 U.S. at 437 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)).

Appellants do not claim that their prosecution was undertaken with the intent to harass or because of any bad faith. Nor do they claim that they have exhausted their avenues for relief in the state court proceeding. *See Huffman v. Pursue Ltd.*, 420 U.S. 592, 608-10 & n.21 (1975) (requiring, for a federal court to assert jurisdiction over federal issues under 42 U.S.C.A. § 1983 in a pending state action, exhaustion of state appellate remedies "unless [the claimant] can bring himself within one of the exceptions specified in *Younger*"). Accordingly, for a federal court to disregard the mandates of *Younger*, Appellants must show extraordinary circumstances demonstrating that they do not have an adequate remedy at law and the danger of irreparable injury if they are denied equitable relief is both great and immediate. *Younger*, 401 U.S. at 44. As is discussed below, we conclude that Appellants cannot establish either.

C.

1.

Appellants first contend that *Younger* is inapplicable because, they assert, it "plainly appears" that the courts of North Carolina will "not afford" them "adequate protection." *Younger*, 401 U.S. at 44. They concede that they have pretrial avenues in which they can raise their double jeopardy claims in state court, but they argue that because the North Carolina Supreme Court has already decided that North Carolina's pre-1995 amendment drug tax[5]*is not* a criminal penalty, *see*

---

[5] Because the General Assembly of North Carolina has amended the drug tax law several times since the courts in *State v. Ballenger*, 481

6

*State v. Ballenger*, 472 S.E.2d 572 (N.C. Ct. App. 1996), *aff'd*, 481 S.E.2d 84 (N.C. 1997) (*per curiam*), any contrary argument in a North Carolina state court would be futile. Further, Appellants note that this court has determined that North Carolina's pre-1995 amendment drug tax *is* a criminal penalty. *See Lynn v. West*, 134 F.3d 582, 593-94 (4th Cir. 1998). The disagreement between the North Carolina courts and this court, Appellants assert, demonstrates that North Carolina will violate their federal constitutional rights and, thus, will not afford them adequate protection. As discussed below, we conclude that because neither the Fourth Circuit nor the North Carolina Supreme Court has ever analyzed the post-amendments drug tax under which Appellants were assessed their taxes to determine if it is a criminal punishment, Appellants cannot demonstrate that the North Carolina courts will plainly not afford them adequate protection.

The decisions in *Ballenger* and *Lynn* were based on an analysis of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 783 (1994). In *Kurth Ranch*, the United States Supreme Court determined that Montana's tax on illegal drugs was so fundamentally punitive that it was actually a criminal punishment such that an assessment of the drug tax, after a criminal penalty had already been imposed, violated the Double Jeopardy Clause by imposing an unconstitutional second punishment. *Id.* at 783. Montana characterized its law as civil, but the Court determined that it was actually a "second punishment" for double jeopardy purposes by looking at four features: "(1) the high tax rate, (2) the deterrent purpose of the tax, (3) the fact that the tax was conditioned on the commission of a crime, and (4) the fact that the tax was levied on `possession of goods that no longer exist and that the taxpayer never lawfully possessed.'" *Lynn*, 134 F.3d at 589 (quoting *Kurth Ranch*, 511 U.S. at 780-84).[6]

---

S.E.2d 84 (N.C. 1997), and *Lynn v. West*, 134 F.3d 582 (4th Cir. 1998), considered it, *see infra* at 8-10, we refer to the drug tax law in force at the time of *Ballenger* and *Lynn* as the "pre-1995 amendment drug tax" and the drug tax law after the amendments as the "post-amendments drug tax."

[6] ***Department of Revenue of Montana v. Kurth Ranch***, 511 U.S. 767 (1994), did not involve the issue of *Younger* abstention because the underlying dispute occurred in a federal bankruptcy proceeding and went to the Supreme Court on direct review from the Ninth Circuit Court of Appeals, *id.* at 773-75.

7

In *Ballenger*, 481 S.E.2d at 84, the North Carolina Supreme Court affirmed, without comment, an appellate court decision holding that North Carolina's pre-1995 amendment drug tax did not have "such fundamentally punitive characteristics as to render it violative of the prohibition against multiple punishments [under] the Double Jeopardy Clause," *Ballenger*, 472 S.E.2d at 575. The North Carolina appellate court reviewed the pre-1995 amendment drug tax and concluded that it was not as punitive as Montana's drug tax in *Kurth Ranch* and not a criminal penalty because:

> the North Carolina tax becomes payable within forty-eight hours after the taxpayer comes into possession of the substance [and] is not a tax on confiscated goods, as was the case with the Montana tax, which became due only upon the taxpayer's arrest for possession of the substance. To the contrary, the dealer is not required . . . to disclose his or her identity . . . and any information obtained . . . is confidential and cannot be used in a criminal prosecution . . . .

*Id.* at 575.

After the *Ballenger* decision, we construed the same pre-1995 amendment drug tax and concluded that it was a criminal penalty because:

> the [d]rug [t]ax contains no features that allow us to distinguish *Kurth Ranch*. The rate of taxation is even steeper than the tax in *Kurth Ranch*. Unlike the application of a normal income tax on illegal activity, the [d]rug [t]ax is enforced only against criminals. . . . [T]he [d]rug [t]ax does not contemplate lawful dealings in the product that is the subject of the tax. The [d]rug [t]ax singles out a class of persons who have engaged in criminal activity and subjects the class to a rate of taxation far beyond that faced by any legitimate taxpayer.

*Lynn*, 134 F.3d at 592.[7]

---

[7] Although we did address in *Lynn* whether North Carolina's pre-1995 amendment drug tax was a criminal punishment under *Kurth Ranch*, as

8

In 1995, 1997, and again in 1998, before North Carolina assessed the drug tax on Appellants, the General Assembly of North Carolina, partially in response to the Supreme Court's decision in *Kurth Ranch* and our decision in *Lynn*, dramatically altered its drug tax. For example, in 1995, the General Assembly (1) made the drug tax payable upon receipt of drugs rather than upon a criminal violation; (2) lowered the tax on various drugs; (3) repealed the section that made the violation of the drug tax a Class I felony; and (4) lowered the interest and penalty applicable when a dealer fails to pay the tax within 45 days of receiving the drugs from 100% to 50%. *See* N.C. Gen. Stat. §§ 105-113.106, -113.107, -113.110, -113.110(A) (1994), *amended by* An Act to Revise the Controlled Substance Excise Tax, Ch. 340, H.B. No. 123 (1995). In 1997, the General Assembly included previously unaccounted for substances, such as mash and other illicit beverages. *See* N.C. Gen. Stat. §§ 105-113.106, -113.107 (1996), *amended by* An Act to Levy an Excise Tax on Illicit Spirituous Liquor, an Excise Tax on Mash, and an Excise Tax on Illicit Mixed Beverages, N.C. Sess. Laws 1997-292 (1997). In 1998, the General Assembly (1) lowered the rate at which it taxed cocaine from $200 per gram to $50 per gram; (2) lowered the rate at which it taxed drugs based on dosage units from $400 per 10 dosage units to $200 per 10 dosage units; and (3) completely abolished the special penalty and interest section and replaced it with the general interest and penalty provisions applicable to all taxes paid in North Carolina, effectively reducing the penalty for late payment from 50% to 10-40%. *See* N.C. Stat. §§ 105-113.107, -113.110A (1997), *amended by* An Act to Amend the Excise Tax on Controlled Substances, N.C. Sess. Laws 1998-218 (1998). As part of the 1998 amendments, the General Assembly expressly stated:

> Whereas, the intent of the General Assembly in enacting this tax continues to be to raise revenue through a civil tax on

---

applied to the individuals in that case, we did not address *Younger* abstention or double jeopardy because *Lynn* involved a federal drug prosecution and a challenge to a subsequent assessment of the state drug tax. *Lynn*, 134 F.3d 582, 583-88 (1998) (determining that North Carolina's pre-1995 amendment drug tax was a criminal penalty that could not be imposed without constitutional safeguards that attach to criminal proceedings).

9

> this highly profitable activity . . . [and] not to create a crimi-
> nal penalty . . . Whereas, upon . . . challenge in the federal
> courts, the controlled substance tax was found in 1998 to be
> a criminal penalty . . . Whereas, it is, therefore, the intent of
> the North Carolina General Assembly to modify the tax in
> accordance with [*Lynn*], so that the tax may continue to be
> assessed in a manner consistent with the law as interpreted
> [in *Lynn*].

An Act to Amend the Excise Tax on Controlled Substances, N.C. Sess. Laws 1998-218 (1998).

Neither North Carolina's *Ballenger* decision nor our decision in *Lynn* addressed North Carolina's amended drug tax, which is at issue in this case, because both cases involved tax assessments before 1995.[8] In fact, no court[9] has considered whether North Carolina's post-amendments drug tax provides the "the clearest proof" of punitive purpose or effect necessary to override the General Assembly's intent

---

[8] Although our decision in *Lynn* cites to the 1996 version of North Carolina's drug tax, we clearly interpreted North Carolina's pre-1995 amendment drug tax. *See, e.g.*, *Lynn*, 134 F.3d at 590 (discussing the 100% penalty applicable to late payments of the drug tax). As stated in the text, the General Assembly of North Carolina modified the penalty provision for late payment in 1995 from a 100% to a 50% penalty and in 1998 reduced the penalty to 10-40%. *See supra* at 9-10.

[9] Lower courts in North Carolina have decided cases where local authorities had assessed the post-amendments drug tax. The courts in these cases, however, have not discussed the 1995, 1997, or 1998 amendments and have not addressed whether the post-amendments drug tax contains the punitive characteristics necessary render it a criminal penalty under *Kurth Ranch*. Rather, the courts relied on North Carolina's Supreme Court ruling in *Ballenger* and summarily held, without comment, that the drug tax is not a criminal penalty. *See, e.g.*, *State v. Crenshaw*, 551 S.E.2d 147, 151 (N.C. Ct. App. 2001) (stating that *Lynn* "is not binding on our State courts" and overruling a double jeopardy objection on that basis). Regardless, even if North Carolina's pre-1995 amendment drug tax and post-amendments drug tax were substantially the same, the North Carolina Supreme Court is not bound by its prior decision and can overturn it. *See Leonard v. Hammond*, 804 F.2d 838, 840-41 (4th Cir. 1986).

to create a civil law and transform it into a criminal penalty. *Hudson v. United States*, 522 U.S. 93, 99-100 (1997) (holding that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty") (internal citations omitted).[10] Based on the wide-ranging amendments to the drug tax and the fact that Appellants make no claim that the amendments were insubstantial, we decline to hold that North Carolina's post-amendments drug tax is sufficiently similar to the pre-1995 amendment drug tax such that we should treat them the same.[11] Sim-

---

[10] Under *Hudson*, to determine whether a sanction is a civil or criminal penalty, a court must (1) "ask whether the legislature `in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other,'" *Hudson*, 522 U.S. at 493 (quoting *United States v. Ward*, 488 U.S. 242, 248 (1980)), and then, if the sanction was intended to be civil in nature, (2) "`inquir[e] further whether the statutory scheme was so punitive either in purpose or effect' as to `transfor[m] what was clearly intended as a civil remedy into a criminal penalty,'" *id.* (quoting *Ward*, 488 U.S. at 248-49, and *Rex Trailor Co. v. United States*, 350 U.S. 148, 154 (1956)). This second inquiry is guided by the factors discussed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), and "`considered in relation to the statute on its face,'" *Hudson*, 522 U.S. at 493 (quoting *Kennedy*, 372 U.S. at 169). The Court noted, "important[ly] . . . , [that] only `the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quoting *Ward*, 488 U.S. at 249). Although *Hudson*, 522 U.S. at 101-02, expressly overruled the method of analysis in *United States v. Halper*, 490 U.S. 435 (1989), on which *Kurth Ranch* relied, we recognized in *Lynn* that Hudson's "`clearest proof' requirement "does not appear to make the challenger's burden any tougher than it already was." *See Lynn*, 134 F.3d at 592 n.10 (quoting *Hudson*, 522 U.S. at 493).

[11] For example, under North Carolina's pre-1995 amendment drug tax, the plaintiff in *Lynn* was assessed $389,000 for possession of 970 grams of cocaine. *See Lynn*, 134 F.3d at 584 (calculating a $200 per gram tax plus a 100% penalty plus $1,125 interest). Under North Carolina's post-amendments drug tax, the same 970 grams of cocaine would only be assessed approximately $67,920 ($50 per gram plus a 40% penalty), which would be approximately one-sixth of the assessed amount. Likewise, in the instant case, Appellants would have been assessed approximately $48,400 for their 1208 ecstasy pills under North Carolina's pre-

11

ply put, an assertion that the North Carolina courts will likely decide a constitutional issue in a way contrary to what Appellants believe the Constitution mandates is not a sufficient basis to avoid application of *Younger* abstention. *See Leonard v. Hammond*, 804 F.2d 838, 840-41 (4th Cir. 1986) (noting that futility was not demonstrated by a North Carolina Supreme Court ruling because the North Carolina Supreme Court could modify or reverse a prior holding). Because our decision in *Lynn* and the North Carolina cases Appellants cite are not controlling for their situation, Appellants cannot demonstrate the type of futility that must be established to justify federal court intervention in an ongoing state proceeding.[12]

2.

Appellants argue in the alternative that *Younger* abstention is inappropriate under the reasoning of *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996) (en banc) (*Gilliam III*). Specifically, they contend that *Gilliam III* stands for the proposition that the mere allegation of "a colorable claim" of a double jeopardy violation is sufficient to establish exceptional circumstances warranting federal court intervention without any separate showing. *Gilliam III*, 75 F.3d at 904. Finding Appellants' reliance on *Gilliam III* misplaced, we reject their overly expansive interpretation of that case.

---

1995 amendment drug tax ($200 per 10 dosage units plus a 100% penalty) while they were in fact only assessed $8,667.13 under the post-amendments drug tax ($50 per 10 dosage units plus a 40% penalty), which is approximately one-sixth of what would have been assessed under the pre-1995 amendment drug tax. Moreover, the post-amendments drug tax is not conditioned on a criminal offense, and payment of the tax cannot be used to criminally prosecute the taxpayer.

[12] We have acknowledged, albeit in the habeas corpus context, that North Carolina's decisions holding that the pre-amendment drug tax was distinguishable from the tax in *Kurth Ranch* are not objectively unreasonable. *See Vick v. Williams*, 233 F.3d 213, 220-22 (4th Cir. 2000) (holding in a habeas challenge under § 2254 that North Carolina's decisions upholding the pre-amendment drug tax as non-criminal were not an objectively unreasonable interpretation of federal law).

12

In *Gilliam III*, petitioners argued that because a state trial judge granted a mistrial over their objection and in the absence of manifest necessity during their first trial, subjecting them to a second criminal prosecution would violate their rights under the Double Jeopardy Clause. We did not hold that an allegation of a double jeopardy violation automatically precludes *Younger* abstention. Rather, after detailing the well-settled double jeopardy jurisprudence protecting individuals against successive prosecutions for the same offense, we concluded that petitioners' allegations established a substantial likelihood of an irreparable double jeopardy violation. *Id.* at 893-95. We expressly based our decision not to abstain under *Younger* on the fact that a "portion of the constitutional protection [the Double Jeopardy Clause] affords would be irreparably lost if Petitioners were forced to endure *the second trial* before seeking to vindicate *their constitutional rights at the federal level.*" *Id.* at 904 (emphasis added); *see also Abney v. United States*, 431 U.S. 651, 660 (1977) (concluding that the protection from multiple trials for the same offense afforded by the Double Jeopardy Clause "would be significantly undermined if appellate review were postponed until after conviction and sentence").

In contrast, Appellants have presented a much less compelling argument that absent federal court intervention, they will suffer an immediate and irreparable constitutional deprivation. *See e.g.*, *Younger*, 401 U.S. at 44. Unlike the defendants in *Gilliam III*, Appellants yet have access to pretrial avenues in their current criminal prosecutions whereby they may raise their constitutional contentions before any double jeopardy injury could inure. *See supra* at 3-4; *see also* N.C. Gen. Stat. § 15A-952(a) (2001) ("Any defense, objection, or request which is capable of being determined without the trial of the general issue may be raised before trial by motion."); *Gilliam III*, 75 F.3d at 889 (noting that the defendants had filed a motion to dismiss on double jeopardy grounds in the state courts prior to their second trial and appealed the denial of that motion to the South Carolina Supreme Court before invoking federal jurisdiction); *cf. Gerstein v. Pugh*, 420 U.S. 103, 107-08 n.9 (1975) (finding state forum inadequate because there was no preliminary hearing at which plaintiffs could present constitutional claims as to pretrial conditions). Because jeopardy does not attach during pretrial procedures and motions, *Crist v. Bretz*, 437 U.S. 28, 50 (1978) ("[I]t has never been held that jeopardy attaches as of the making or deciding of pretrial motions."), and

13

Appellants have state procedures whereby they may foreclose a violation of their double jeopardy rights, any double jeopardy harm at this stage of Appellants' litigation is neither immediate nor irreparable. Appellants must raise their contentions in their current prosecution and appeal any undesirable decision before a federal district court asserts jurisdiction.[13] *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 302 (1984) (noting that the defendant had filed a pretrial motion to dismiss and appealed it to the Massachusetts Supreme Court before invoking federal jurisdiction); *Willhauck v. Flanagan*, 448 U.S. 1333, 1325-26 (1980) (Brennan, Circuit Justice) (denying consideration of a writ of certiorari for a claim based on double jeopardy due to a lack of "irreparable harm" because "once jeopardy [attaches for the first time], [a defendant] should . . . make his claim before the [state] trial judge [in his second trial], at which time the courts can give due consideration to his claim"). Because Appellants have not made a showing of an immediate and irreparable constitutional injury absent federal court intervention, *Gilliam III* does not permit us to disregard *Younger*.

We also note that Appellants have not shown a "great" or "substantial" likelihood that they will suffer any constitutional deprivation. *See, e.g.*, *Younger*, 401 U.S. at 45 (holding that "danger of irreparable loss [must be] great and immediate"); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983) (holding that a "*substantial and immediate irreparable* injury" is a precondition to invoking the exceptional circumstances exception to *Younger* abstention). For Appellants to establish that their prosecution violates double jeopardy by exposing them to multiple criminal punishments, they must prove:

---

[13] Because Appellants have pretrial avenues to raise their double jeopardy claim before the North Carolina courts, we need not resolve the issue of whether a federal district court should exercise its jurisdiction over Appellants' claim once they have exhausted North Carolina's pretrial procedures. *See Younger v. Harris*, 401 U.S. 37, 46 (1971) ("[I]n view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is both great and immediate. . . . Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered `irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense to a single criminal prosecution.").

14

(1) that the payment of the drug tax was a criminal penalty; (2) that took place in a separate proceeding; (3) for the same offense for which they are now being prosecuted. *See Hudson*, 522 U.S. at 98 (setting forth test for double jeopardy violation based upon multiple punishments). As is set forth below, there are numerous, significant impediments to Appellants' ability to make this showing.

Initially, it is arguable whether the current version of North Carolina's drug tax constitutes criminal punishment within the meaning of *Hudson*. *See Hudson*, 522 U.S. at 98 (concluding that administrative sanctions were not sufficiently punitive and, therefore, were not criminal penalties for purposes of double jeopardy); *see also Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (discussing role of statutory construction in determining whether penalty is civil or criminal under *Hudson*); *see generally* Lisa Melenyzer, *Double Jeopardy Protections from Civil Sanctions after Hudson v. United States*, 89 J. Crim. L. & Crim. 1007, 1009-1011, 1016-23 (1999) (explaining the evolution, criticisms, and limits of the multiple punishment doctrine). Appellants contend that the drug tax is a criminal penalty on the basis of *Lynn*. We cannot agree that *Lynn* is controlling. As is discussed at length above, *see supra* at 9-12, since *Lynn* was decided, North Carolina has significantly amended its drug tax laws. These amendments have yet to be analyzed to determine whether those portions of the drug tax that were discussed in *Lynn* have been altered such that the drug tax no longer implicates any federal constitutional concern. *See* N.C. Gen. Stat. §§ 105-113.107(a), (2a), -113,110A, -236.

Assuming *arguendo* that the current drug tax is a criminal penalty, it is not clear that the payment of the drug tax took place in a prior "proceeding" within the meaning of *Hudson*. *See Hudson*, 522 U.S. at 99 (concluding that the Double Jeopardy Clause protects individuals from the imposition of "multiple criminal punishments" for the same offense, but "*only when such occurs in successive proceedings*."). When Appellants received their drug tax assessment, they simply paid the tax; they apparently did not participate in a hearing or an appearance of any type. Under *Hudson*, if there has been no prior "proceeding," Appellants' current prosecution cannot be successive and, thus, the Double Jeopardy Clause would not be implicated.

15

Similarly, to the extent that the assessment of the drug tax is part of the current prosecution, and not a separate proceeding, there likely is no double jeopardy restriction on imposing both types of punishment, irrespective of whether the drug tax is deemed a "criminal" punishment. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983) ("Where . . . a legislature specifically authorized cumulative punishment under two statutes, regardless of whether those two statutes proscribe the `same' conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."); *Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("[T]he question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."); *United States v. Studifin*, 240 F.3d 415, 418 (4th Cir. 2001) ("Where the issue is solely that of multiple punishment, as opposed to multiple prosecutions, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *United States v. Terry*, 86 F.3d 353, 355 (4th Cir. 1996) ("If [the Legislature] clearly authorizes multiple punishments for the same act or transaction, the Double Jeopardy Clause is not offended when the multiple punishments are imposed after a single trial."); *Cummings v. Evans*, 161 F.3d 610, 614 (10th Cir. 1998) (holding that the double jeopardy inquiry is limited to determining "whether [the] state legislature intended to prescribe cumulative punishments for a single criminal incident, [and] we are bound by a state court's determination of the legislature's intent"). Thus, if the General Assembly of North Carolina contemplated and in fact intended that drug dealers be criminally punished for any drug offenses *and* assessed a tax for any unauthorized substances in their possession, *see* N.C. Gen. Stat. § 105-113.105 (2000) ("Nothing in this Article may in any manner provide immunity from criminal prosecution for a person who possesses an illegal substance."), there is no double jeopardy bar on North Carolina prosecuting, and a court imposing, both a criminal punishment and a drug tax assessment in a single proceeding.[14] In

---

[14] The Due Process Clause also assures that what punishment is imposed has prior legislative approval. *See Pacific Mut. Life Ins. Co. v.*

16

sum, we are not persuaded that there is a substantial likelihood that Appellants' prosecution is violative of double jeopardy principles.

None of this is to say that Appellants ultimately will not prevail on their double jeopardy claim. It is only to say that where the alleged double jeopardy violation is far from clear, immediate, or irreparable,the important *Younger* policy of allowing the State to pursue its prosecution free from federal court intervention outweighs the Appellants' interest in having the double jeopardy issue resolved in a federal forum. *Commonwealth of Va. v. Kelly*, 29 F.3d 145, 147-48 (4th Cir. 1994) ("There being little, if any, likelihood that Kelly can succeed on the merits of his federal double jeopardy claim, and the public interests weighing heavily in favor of the Commonwealth's ability to pursue its criminal proceedings free of federal court intervention, the district court erred in staying Kelly's . . . trial . . . ." (internal citations omitted)); *Stevens*, 675 F.2d at 949 (holding that "the *Younger* policy is the weightier when the defendant is not being asked to undergo a second trial"). Thus, in balancing the important policies underlying *Younger*, we conclude that Appellants have not established the existence of a substantial and immediate danger of irreparable constitutional loss warranting federal court intervention.

### III.

In conclusion, the issue before us is not whether Appellants will suffer unconstitutional multiple punishments; rather, it is whether a federal court should intervene into a state court proceeding to decide the federal constitutional issues for the state court. The essence of *Younger* is comity — state courts are equally entitled to, and capable of, interpreting constitutional law:

> [S]ince both federal and state courts have a duty to enforce the Constitution, there is no constitutional basis, in the

---

*Haslip*, 499 U.S. 1, 28-29 (1991) (Scalia, J., concurring in judgment) (discussing the breadth of the Due Process Clause and how it is a guarantee of the process provided by the law of the land); *Crist v. Bretz*, 437 U.S. 28, 51 (1978) (holding that the Due Process Clause protects against prosecutorial abuse).

17

absence of some demonstrable infirmity in the state judicial process itself, for preferring federal courts to state courts as adjudicators of federal constitutional claims.

1 Laurence H. Tribe, *American Constitutional Law*, § 3-28 at 570 (3d ed. 2000). "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431. Because Appellants failed to establish any of the exceptions to *Younger*, we conclude that the district court did not abuse its discretion in abstaining from adjudicating Appellants' double jeopardy claim.

*AFFIRMED*

18