**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NORFOLK SOUTHERN RAILWAY
COMPANY; CSX TRANSPORTATION,
INCORPORATED; CONSOLIDATED RAIL
CORPORATION; AMERICAN PREMIER
UNDERWRITERS, INCORPORATED,
formerly known as Penn Central
Corporation,

*Plaintiffs-Appellants,*

v.

CHIEF JUSTICE WARREN R. MCGRAW;
JUSTICE ELLIOTT E. MAYNARD;
JUSTICE LARRY V. STARCHER; JUSTICE
JOSEPH P. ALBRIGHT; JUSTICE ROBIN
JEAN DAVIS; JUDGE MARTIN J.
GAUGHAN, First Judicial Circuit;
JUDGE A. ANDREW MACQUEEN,
Thirteenth Judicial Circuit,

*Defendants-Appellees,*

VARIOUS FELA CLIENTS OF JAMES F.
HUMPHREYS AND ASSOCIATES, L.C.,

*Movants.*

No. 02-2032

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-01-1238)

Argued: May 8, 2003

Decided: August 18, 2003

Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Carter G. Phillips, SIDLEY, AUSTIN, BROWN & WOOD, L.L.P., Washington, D.C., for Appellants. John Hampton Tinney, THE TINNEY LAW FIRM, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** Stephen B. Kinnaird, Luisa Caro, Jay T. Jorgensen, SIDLEY, AUSTIN, BROWN & WOOD, L.L.P., Washington, D.C.; Fred Adkins, Luke A. Laffere, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, L.L.P., Huntington, West Virginia, for Appellants. John H. Tinney, Jr., James K. Tinney, THE TINNEY LAW FIRM, P.L.L.C., Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellants Norfolk Southern Railway Co., CSX Transportation, Inc., and Consolidated Rail Corp. (collectively, the Railroads) brought an action in the United States District Court for the Southern District of West Virginia, pursuant to 42 U.S.C.A. § 1983 (West Supp. 2003), requesting a declaratory judgment that the operation of West Virginia Trial Court Rule 26.01 and its application in pending asbestos litigation against the Railroads violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The district court abstained from exercising jurisdiction based on *Younger v. Harris*, 401 U.S. 37 (1971), because the case involved numerous ongoing state judicial proceedings, involved important state interests in applying Rule 26.01, and the Railroads had an adequate opportunity to

raise their constitutional challenges in the state courts. For the reasons that follow, we affirm the district court's decision to abstain.

## I.

Due to the large number of asbestos and other mass tort cases in West Virginia, the West Virginia Supreme Court of Appeals enacted West Virginia Trial Court Rule 26.01, entitled "Mass Litigation Panel and Procedure," allowing, in pertinent part, two or more "personal injury mass torts" cases "involving common questions of law or fact" to be consolidated into one case. W. Va. Trial Ct. Rule 26.01 (Michie 2003). Rule 26.01 allows "[a]ny party, judge, or the Administrative Director of the Courts" to file a motion to consolidate similar cases and refer them to a Mass Litigation Panel (MLP). MLPs have the power "[t]o develop and implement case management and trial methodologies for mass litigation and to fairly and expeditiously dispose of civil litigation which may be referred to it." *Id.*

In June of 2000, two West Virginia trial court judges, Judges MacQueen and Recht, moved to refer thousands of pending asbestos cases to an MLP.[1] The Railroads, who are defendants in several thousand of these pending cases, opposed the motion. Chief Justice Maynard granted the referral motion and halted all further proceedings in all pending asbestos cases. Although the Railroads filed amicus briefs in a state court challenge filed by another defendant in the consolidated asbestos cases, the Railroads themselves have never attempted to challenge Rule 26.01 in state court.

On November 29, 2001, the Railroads filed a complaint under 42 U.S.C.A. § 1983 in federal district court against the Justices of the West Virginia Supreme Court of Appeals and those Judges oversee-

---

[1] At the time of the motion, approximately 25,667 asbestos cases were pending in West Virginia state courts. These cases named approximately sixty different defendants. Several thousand of the asbestos cases involved claims against the Railroads under the Federal Employers' Liability Act (FELA). FELA grants a federal damages remedy for a railroad employee who suffers employment-related injuries resulting from a carrier's negligence. 45 U.S.C.A. §§ 51-60 (West 1986).

ing the asbestos mass litigation,[2] requesting (1) a "declaratory judgment that [Rule] 26.01 operates in an unconstitutional manner because it deprives defendants of due process of law" and (2) a "declaratory judgment that the application of [Rule] 26.01 to join thousands of asbestos claims pending in West Virginia and automatically to refer all newly-filed asbestos cases to the Mass Litigation Panel, violates due process; that joinder of multiple asbestos plaintiffs for trial violates [the Railroads'] due process rights to present a defense as it virtually guarantees jury confusion and a verdict in favor of all plaintiffs." (J.A. at 26-27.)

The district court abstained from considering the Railroad's complaint under *Younger v. Harris*, 401 U.S. 37 (1971), finding that (1) the dispute involved various ongoing judicial proceedings; (2) West Virginia had an important interest in regulating its judicial system via Rule 26.01; and (3) the Railroads had an adequate opportunity in thier state proceedings to raise their constitutional challenges. The Railroads timely appealed.

## II.

"We review the district court's decision to abstain under *Younger* for abuse of discretion." *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003). "*Younger v. Harris*, [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The notion of "comity" underlying this abstention doctrine includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions

---

[2]The Railroads filed their claim against the then Chief Justice of the West Virginia Supreme Court of Appeals, Warren R. McGraw, the Associate Justices, and Judges Gaughan and MacQueen. We note that Justice Larry V. Starcher is currently the Chief Justice of the West Virginia Supreme Court of Appeals and Judge Gaughan and Judge MacQueen have been replaced by Judge Arthur M. Recht and Judge Booker T. Stephens.

are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. "This concern mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). "The [*Younger* abstention] doctrine recognizes that state courts are fully competent to decide issues of federal law and has as a corollary the idea that all state and federal claims should be presented to the state courts." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (internal citation omitted).

In *Middlesex*, the Supreme Court articulated a three-part test to determine if abstention is appropriate under the principles of federalism articulated in *Younger*. The Court held that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Middlesex*, 457 U.S. at 432; *see also Martin Marietta Corp. v. Md. Comm'n on Human Rel.*, 38 F.3d 1392, 1396 (4th Cir. 1994) (same). We analyze each of these factors in turn.

A.

We consider first whether there is an ongoing state proceeding. This first *Middlesex* factor is satisfied by the thousands of ongoing asbestos cases against the Railroads that were consolidated pursuant to Rule 26.01. A favorable ruling in the district court would interfere with and disrupt these ongoing proceedings in which the challenged rule has been applied. The fact that the Railroads seek only a declaratory judgment, rather than injunctive relief, does not change this conclusion. *See Samuels v. Mackell*, 401 U.S. at 66 (1971) (abstaining under *Younger* from granting a declaratory judgment because "where an injunction would be impermissible under [*Younger* abstention] principles, declaratory relief should ordinarily be denied as well");

*Moye v. City of Raleigh*, 503 F.2d 631, 633-34 (4th Cir. 1974) (abstaining under *Younger* because "[a] declaratory judgment would, in fact, adjudicate the merits of Moye's defenses to the state prosecution; such a judgment might then be res judicata and virtually take the case out of state court before it could be heard and decided" (internal citations and quotation marks omitted)); *cf. Steffel v. Thompson*, 415 U.S. 452, 469-71 (1974) (holding that declaratory relief may be appropriate when there is a threat of state prosecution, but no ongoing state proceeding). Accordingly, the district court did not abuse its discretion in finding that the first *Middlesex* factor was satisfied.

B.

The existence of an ongoing state proceeding, however, is not sufficient. The second *Middlesex* factor requires that the ongoing proceeding implicate important state interests. In other words, the ongoing state proceeding must be "the type of proceeding to which *Younger* applies." *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367 (1989) (*NOPSI*). The Supreme Court has repeatedly held that states have important interests in "proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function." *NOPSI*, 491 U.S. at 368; *see also Middlesex*, 457 U.S. at 432 ("Proceedings necessary . . . for the functioning of the state judicial system . . . evidence the state's substantial interest in the litigation."); *Pennzoil*, 481 U.S. at 12-13 ("[T]he States have important interests in administering certain aspects of their judicial systems.").

Rule 26.01 was enacted to deal with the "elephantine mass of asbestos cases" that "threaten[ed] to cripple the common law system of adjudication, if for no other reason [than] the sheer volume of cases." *State ex rel. Allman v. MacQueen*, 551 S.E.2d 369, 373-74 (W. Va. 2001) (internal quotation marks omitted). Consolidating the "massive filings of civil cases involving common questions of law and/or fact" allows the West Virginia trial courts to control their dockets effectively. As the West Virginia Supreme Court of Appeals stated:

> TCR 26.01 was promulgated and adopted by this Court under our constitutional rule-making authority for the

express purpose of authorizing the creation of a mass litiga-
tion panel for the following objective: "To develop and
implement case management and trial methodologies for
mass litigation and to fairly and expeditiously dispose of
civil litigation." W. Va. T.C.R. 26.01(b)(1). Through the
creation of such a mass litigation panel, it was believed that
this State's judicial system and those individuals seeking
redress would benefit by permitting the use of innovative
means of trial management concerning issues unique to
mass litigation, which would in turn encourage a more
expeditious resolution of these matters than that permitted
by traditional means of case resolution.

*Allman*, 551 S.E.2d at 374. Accordingly, the district court did not
abuse its discretion in finding that the second *Middlesex* factor was
satisfied because managing the trial court docket so as to handle all
of the pending cases without paralyzing the functioning of the court
is an important state interest that implicates the state courts' ability to
perform their judicial function, *see NOPSI*, 491 U.S. at 368.

Nonetheless, the Railroads argue that *Younger* does not apply to
their first claim because it is a type of facial challenge that attacks the
way that Rule 26.01 operates in practice. The Railroads argue that the
Court in *NOPSI* held that *Younger* abstention does not apply to facial
challenges to legislative rules. We disagree. The relevant issue in
*NOPSI*, as in this case, was the nature of the ongoing state proceed-
ing, not the nature of the federal claims. *See NOPSI*, 491 U.S. at 367
("NOPSI's challenge must stand or fall upon the answer to the ques-
tion whether *the Louisiana court action* is the type of proceeding to
which *Younger* applies." (emphasis added)). The ongoing state pro-
ceeding in *NOPSI* was not the type of proceeding to which *Younger*
applies because it was only a state judicial proceeding reviewing leg-
islative or executive action. *Id.* at 368 ("[I]t has never been suggested
that *Younger* requires abstention in deference to a state judicial pro-
ceeding reviewing legislative or executive action."). Thus, the Court
in *NOPSI* held only that federal challenges to legislative rules do not
impermissibly interfere with parallel state challenges to legislative
rules. *Id.* Because, in this case, the ongoing state proceeding is not
simply a parallel challenge to legislative or executive action,[3] but

---

[3]In fact, the Railroads concede that they have never challenged the
constitutionality of Rule 26.01 in state court.

instead is a proceeding applying the challenged rule in an effort to manage the crowded docket of the West Virginia trial courts, *NOPSI* does not control.

## C.

Turning to the final *Middlesex* factor, for abstention to be appropriate, a party must have an adequate opportunity to raise and fully litigate its constitutional claim in the state proceeding. *Middlesex*, 457 U.S. at 432. The federal plaintiff has the burden to show "'that state procedural law barred presentation of [its] claims.'" *Pennzoil*, 481 U.S. at 14 (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)). Moreover, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15. As noted above, although the Railroads have filed amicus briefs in state court proceedings challenging Rule 26.01, the Railroads have not themselves attempted to present their due process claims in the state court proceeding. Thus, unless there is unambiguous authority to the contrary, we should assume that the state procedures will afford an adequate remedy.

The Railroads argue that the state court does not provide an adequate opportunity to raise its constitutional claims because the West Virginia Supreme Court of Appeals has dismissed as unripe challenges by other asbestos defendants to the constitutionality of mass trials under Rule 26.01. Thus, the Railroads argue, defendants are unable to raise their constitutional claims pretrial, and are forced to settle rather than face a ruinous verdict in a consolidated mass trial.

Although it is true that for certain claims, notably double jeopardy claims, pretrial avenues for raising constitutional contentions are critical, *see Nivens*, 319 F.3d at 159, we are not convinced that the Railroads' due process claim is of that ilk. Even assuming, arguendo, that the ability to raise their due process claims pretrial is necessary, the Railroads have the ability to raise their constitutional arguments before trial in the ongoing state proceeding. The West Virginia Supreme Court of Appeals dismissed as unripe other challenges to Rule 26.01 because no final mass trial orders had been issued. *See Allman*, 551 S.E.2d at 373 ("Given the stage of this litigation, we

view such issues as premature, especially in light of the fact that no decision has been reached as to whether mass trials will be held or not."); *State ex rel. Mobil Corp. v. Gaughan*, 563 S.E.2d 419, 421 (W. Va. 2002) ("Because the trial court has yet to finalize the specifics regarding identification of the common issues that will be the focus of the initial liability phase of the litigation, Mobil's contention of a denial of Due Process predicated on the lack of commonality of the issues subject to the liability phase is simply premature."). Neither of these cases provide "unambiguous authority" for the proposition that the Railroads cannot raise their claims after final mass trial orders are issued, but before the trials begin. Moreover, at oral argument, counsel for the West Virginia Justices and Judges agreed on behalf of the West Virginia Supreme Court of Appeals that the Railroads could raise and fully litigate their constitutional claims pretrial, once the claims were ripe. In light of this evidence, therefore, the Railroads have failed to demonstrate "unambiguous authority" that the state court procedures do not provide an adequate remedy. Accordingly, the district court did not abuse its discretion in finding this third *Middlesex* factor satisfied.[4]

### III.

Based on the foregoing, the district court properly abstained by concluding that (1) there was an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the Railroads to raise their federal constitutional claims. Accordingly, we affirm the district court's decision to abstain.

*AFFIRMED*

---

[4]The Railroads also suggest that the West Virginia Supreme Court of Appeals is not an impartial decisionmaker because it promulgated Rule 26.01. This contention, however, is simply unsubstantiated and inadequate. The Railroads provide nothing more than conjecture based on who promulgated the rule, which is insufficient. *See*, *e.g.*, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975) ("Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.").