PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KENNETH SCOTT NIVENS; GLEN LANCE
MANERS; TERRI LYNN STORK,
　　　　　　*Plaintiffs-Appellants,*

v.

PETER S. GILCHRIST, III,
　　　　　　*Defendant-Appellee.*

⎱
⎰ No. 05-1276

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-03-534)

Argued: February 1, 2006

Decided: April 11, 2006

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Motz and Judge King joined.

---

## COUNSEL

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for
Appellants. Norma Smithwick Harrell, Special Deputy Attorney Gen-
eral, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh,
North Carolina, for Appellee. **ON BRIEF:** Roy Cooper, Attorney
General, Raleigh, North Carolina, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Appellants Kenneth Scott Nivens, Glen Lance Maners, and Terri Lynn Stork previously brought an action in the United States District Court for the Western District of North Carolina, seeking to enjoin a pending state criminal drug prosecution against them. Appellants contended that because they had already paid North Carolina's drug tax, their prosecution would violate the Fifth Amendment's Double Jeopardy Clause, made applicable to the states via the Fourteenth Amendment. In *Nivens v. Gilchrist*, 319 F.3d 151 (4th Cir. 2003) (*Nivens I*), we held the district court properly abstained from exercising jurisdiction over Appellants' case based on *Younger v. Harris*, 401 U.S. 37 (1971), in part because Appellants had failed to take advantage of pretrial avenues to raise their double jeopardy defense in their state prosecution. After our decision in *Nivens I*, Appellants raised their double jeopardy defense in state court, where it was denied on the merits. Appellants then returned to federal court, asking the district court to declare the North Carolina drug tax a criminal penalty, enjoin their pending state criminal trial, and award damages for pain and suffering. The district court again abstained from exercising jurisdiction over Appellants' claims and dismissed the suit with prejudice. Because the district court properly abstained under *Younger*, we affirm the dismissal of Appellants' claims for declaratory and injunctive relief. We also affirm the dismissal of Appellants' damages claims against Appellee Peter S. Gilchrist, III, the District Attorney for the Twenty-Sixth Prosecutorial District of North Carolina, because Gilchrist is entitled to immunity in both his official and individual capacities.

I.

The relevant facts of this appeal are straightforward and not in dispute. On July 8, 2000, Appellants were arrested for violations of the North Carolina Unauthorized Substances Act because of their alleged possession and sale of the drug commonly known as ecstasy. Shortly thereafter, the North Carolina Department of Revenue issued notices of tax assessments for possession of the drugs pursuant to North Carolina's Unauthorized Substances Tax Act, N.C. Gen. Stat. §§ 105-

113.105-105.113.113. Within a couple of weeks, North Carolina collected $5730.00 from Nivens, which North Carolina accepted as complete satisfaction of the initial tax for all three Appellants.[1] On January 8, 2001, Stork was assessed two additional taxes in the amount of $1,081.13, which she paid in full. Maners never paid a tax.

Appellants were subsequently indicted under North Carolina law for possession, sale, delivery, and transportation of, and conspiracy to sell and deliver an unauthorized substance. A criminal trial was scheduled for the November 5, 2001, term of the Superior Court of North Carolina. On October 29, 2001, Appellants filed an action under 42 U.S.C.A. § 1983 (West 2003) in federal district court for a temporary restraining order and a preliminary injunction to stay their trial, naming Gilchrist as the sole defendant. The district court abstained under *Younger* and dismissed Appellants' case without prejudice. We affirmed that decision. *See Nivens I*, 152 F.3d at 162.

In state court, Appellants then moved to dismiss North Carolina's prosecution pursuant to N.C. Gen. Stat. Ann. § 15A-952(a) (Lexis-Nexis 2003), which provides that "[a]ny defense, objection, or request which is capable of being determined without the trial of the general issue may be raised before trial by motion." The court, however, denied Appellants' motion to dismiss on double jeopardy grounds because the motion conflicted with *State v. Ballenger*, 472 S.E.2d 572 (N.C. App. 1996), *aff'd per curiam*, 481 S.E.2d 84 (N.C. 1997), which held that the pre-1995 version of North Carolina's drug tax was not a criminal penalty.[2] The North Carolina Court of Appeals and Supreme Court subsequently denied Nivens's petitions for certiorari.

---

[1] North Carolina only requires that a drug's tax be paid once. Thus, although Nivens, Maners, and Stork all received assessments, Nivens's payment was sufficient to cover all three original assessments because the same drugs were taxed three times.

[2] *State v. Ballenger* addressed the pre-1995 version of North Carolina's drug tax, 472 S.E.2d 572 (N.C. App. 1996), which we determined was a criminal penalty in *Lynn v. West*, 134 F.3d 582 (4th Cir. 1998). North Carolina's legislature subsequently amended their drug tax "so that the tax may continue to be assessed in a manner consistent with the law as interpreted [in *Lynn*]." An Act to Amend the Excise Tax on Controlled Substances, N.C. Sess. Laws 1998-218 (1998). In other words, it amended the law with the goal of continuing to raise revenue via a civil tax rather than creating a criminal penalty.

Appellants then returned to federal district court, where they filed the instant § 1983 action and North Carolina moved the district court to dismiss the action or abstain from exercising jurisdiction. On February 3, 2005, the district court, relying on *Younger* and our decision in *Nivens I*, entered an order dismissing Appellants' complaint "with prejudice" because the court concluded that it "lack[ed] subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (J.A. at 1426.) Appellants timely appealed, and this Court has jurisdiction under 28 U.S.C.A. § 1291 (West 1993).

## II.

The issue on appeal is whether the district court erred in dismissing Appellants' claims for declaratory, injunctive, and monetary relief, and if not, whether the district court erred in doing so with prejudice. We review for abuse of discretion the district court's decision to abstain under *Younger*. *Nivens I*, 319 F.3d at 153. We first address the district court's decision to abstain with respect to Appellants' claims for declaratory and injunctive relief.

## A.

In *Younger*, the Supreme Court detailed our "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger*, 401 U.S. at 41. As we noted in *Nivens I*, *Younger* was based on principles of equity and comity. *See Nivens I*, 319 F.3d at 153. As to equity, the Supreme Court explained "that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44. Because in a typical state criminal trial a defendant can raise his constitutional claims as a defense to prosecution, he has an adequate remedy at law. The Court addressed the comity principle by referencing the policy of "Our Federalism," which recognizes that "anxious though [the National Government] may be to vindicate and protect federal rights and federal interests, [it] always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44 (internal quotation marks omitted). Thus, the *Younger* doctrine is anchored in a "belief that the National Government will fare best if

the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

Absent a few extraordinary exceptions, *Younger* mandates that a federal court abstain from exercising jurisdiction and interfering in a state criminal proceeding[3] if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Nivens I*, 319 F.3d at 153.

The Supreme Court has recognized that a federal court may disregard *Younger*'s mandate only where (1) "there is a showing of bad faith or harassment by state officials responsible for the prosecution"; (2) "the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions"; or (3) "other extraordinary circumstances" exist that present a threat of immediate and irreparable injury. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) (internal quotation marks omitted). Although as a general matter, "the cost, anxiety, and inconvenience of having to defend against a criminal prosecution alone [does] not constitute irreparable injury," *Younger*, 401 U.S. at 46 (internal quotation marks omitted), we have previously recognized that one such extraordinary circumstance may exist in the double jeopardy context, where "a portion of the constitutional protection [the Double Jeopardy Clause] affords would be irreparably lost if [claimants] were forced to endure [a] second trial before seeking to vindicate their constitutional rights at the federal level." *Gilliam v. Foster*, 75 F.3d 881, 904 (4th Cir. 1996) (en banc) (*Gilliam III*).

### B.

To the extent Appellants argue that abstention was improper in this case, that argument is largely foreclosed by our decision in *Nivens I*, where we held "[b]ecause Appellants failed to establish any of the

---

[3]*Younger*, in circumstances not relevant here, has since been extended beyond the strict criminal context. *See, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

exceptions to *Younger*, . . . the district court did not abuse its discretion in abstaining from adjudicating Appellants' double jeopardy claim." *Nivens I*, 319 F.3d at 162. In that case, Appellants had argued that (1) *Younger* was inapplicable because the North Carolina courts would plainly not afford them adequate protection and (2) abstention was improper because "a colorable claim of a double jeopardy violation [was] sufficient to establish exceptional circumstances warranting federal court intervention without any separate showing." *Id.* at 155, 159.

The Appellants' first *Nivens I* argument stemmed from their belief that North Carolina courts would not consider their claim that the post-1995 amendment drug tax was a criminal penalty because those courts had already ruled, in *Ballenger*, 472 S.E.2d 572, that the pre-1995 amendment *was not* a criminal penalty. *Nivens I*, 319 F.3d at 155. Further, Appellants suggested that because we previously had determined that the pre-1995 amendment *was* a criminal penalty, *see Lynn v. West*, 134 F.3d 582, 593-94 (4th Cir. 1998), it was necessary for the district court to assert jurisdiction in order to afford adequate protection from North Carolina's inevitable violation of Appellants' constitutional rights. *Nivens I*, 319 F.3d at 155.

We rejected these arguments because, inter alia, the post-1995 "drug tax [was not] sufficiently similar to the [pre-1995] drug tax such that we should treat them the same." *Nivens I*, 319 F.3d at 158. Thus, we treated the penalty status of the post-1995 drug tax as an open question that had yet to be addressed by the North Carolina or federal courts.[4] Once this determination was made, Appellants' first argument boiled down to an "assertion that the North Carolina courts

---

[4]We note that since our decision in *Nivens I*, the Middle District of North Carolina has held that the North Carolina drug tax is a tax under state law and not a criminal penalty. *Hough v. Mozingo*, 2005 WL 2216877 (Sep. 12, 2005) (unpublished) (adopting *Hough v. Mozingo*, 2005 WL 1168462, at *7 (M.D.N.C. Apr. 29, 2005) (magistrate opinion)). Moreover, while this appeal was pending, the North Carolina Supreme Court affirmed *Ballenger*'s central holding that the North Carolina drug tax did not constitute punishment for double jeopardy purposes. *See N.C. School Bds. Ass'n v. Moore*, 614 S.E.2d 504, 515-16 (N.C. 2005).

[would] likely decide a constitutional issue in a way contrary to what Appellants believe the Constitution mandates." *Id.* We concluded that this was "not a sufficient basis to avoid application of *Younger* abstention." *Id.*

Appellants' second *Nivens I* argument was based on a misreading of our decision in *Gilliam III*. We concluded that *Gilliam III* did not, as Appellants suggested, hold that a "colorable" double jeopardy allegation automatically precludes *Younger* abstention. *Nivens I*, 319 F.3d at 159. Rather, as we noted in *Nivens I*, *Gilliam III* held that a party must show a "substantial likelihood of an irreparable double jeopardy violation" in order to avoid *Younger* abstention. *Id.* Moreover, the irreparable harm facing the petitioners in *Gilliam III* was based on a concern that they would be "forced to endure [a] second trial before seeking to vindicate their constitutional rights at the federal level." *Gilliam III*, 75 F.3d at 904. Unlike the petitioners in *Gilliam III*, the Appellants in *Nivens I* had yet to undergo an initial trial and failed to make "a showing of an immediate and irreparable constitutional injury absent federal court intervention." *Nivens I*, 319 F.3d at 160; *see also United States ex rel. Stevens v. Circuit Court of Milwaukee County*, 675 F.2d 946, 948 (7th Cir. 1982) ("To try [petitioner] for the same offense to which he pled guilty would violate the double jeopardy clause but it would not flout [t]he policy of avoiding multiple trials, which is the only objective of the double jeopardy clause that cannot be adequately protected by appeal from (or collateral attack on) a judgment of conviction in the second prosecution." (internal citation and quotation marks omitted)).

We noted, however, that Appellants failed to make the requisite showing in part because — by way of the North Carolina courts — they still had "access to pretrial avenues in their current criminal prosecutions whereby they may raise their constitutional contentions before any double jeopardy injury could inure." *Nivens I*, 319 F.3d at 159. Moreover, we specifically reserved "the issue of whether a federal district court should exercise its jurisdiction over Appellants' claim once they have exhausted North Carolina's pre-trial procedures." *Id.* at 160 n.13. Now that Appellants have exhausted their pretrial avenues, that issue is squarely before us.

Notwithstanding our avoidance of this issue in *Nivens I*, we went on to note that there likely was no danger of a double jeopardy violation, and thus concluded that Appellants failed to show "a 'great' or 'substantial' likelihood that they will suffer any constitutional deprivation." *Id.* at 160 (quoting *Younger*, 401 U.S. at 45; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). We based this conclusion on our view that (1) it was "arguable whether the current version of North Carolina's drug tax constitutes criminal punishment," (2) even assuming it did constitute a criminal penalty, "it is not clear that the payment of the drug tax took place in a prior 'proceeding,'" and (3) "to the extent that the assessment of the drug tax is part of the current prosecution, and not a separate proceeding, there likely is no double jeopardy restriction." *Id.* at 160-61.[5] Thus, we held:

> None of this is to say that Appellants ultimately will not prevail on their double jeopardy claim. It is only to say that where the alleged double jeopardy violation is far from clear, immediate, or irreparable, the important *Younger* policy of allowing the State to pursue its prosecution free from federal court intervention outweighs Appellants' interest in having the double jeopardy issue resolved in a federal forum.

*Id.* at 162.

This holding is not altered by the fact that Appellants utilized North Carolina's pre-trial procedures but failed to prevail on the merits. Abstention does not suddenly become improper simply because Appellants lost on the merits in the state court. *See Nivens I*, 319 F.3d at 158 ("Simply put, an assertion that the North Carolina courts will likely decide a constitutional issue in a way contrary to what Appellants believe the Constitution mandates is not a sufficient basis to avoid application of *Younger* abstention."). In other words, the key question is whether the state allows for Appellants to raise their

---

[5]The Supreme Court outlined these three factors in *Hudson v. United States*, 522 U.S. 93 (1997), which held, among other things, that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100.

objections, not whether the state agrees with those objections. *See Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (holding that a "federal court should not exert jurisdiction if the plaintiffs had an *opportunity* to present their federal claims in the state proceedings. The pertinent issue is whether [the] constitutional claims *could have been raised* in the pending state proceedings. . . . Certainly, abstention is appropriate unless state law *clearly bars* that interposition of the constitutional claims" (emphasis added and internal quotation marks and citations omitted)).

As the district court recognized, the fact that Appellants were able to present their claims and have them addressed in state court suffices and continues to make federal intervention inappropriate. *See* (J.A. at 1428-29 ("The fact that Plaintiffs did not obtain the result they desired from that process or the degree of review that they thought proper does not negate the fact that the state court addressed their claim.").) In addition, because we continue to believe that Appellants' case is distinguishable from *Gilliam III* and Appellants fail to show a clear, immediate, or irreparable double jeopardy violation, abstention remains the proper course of action for the district court with respect to Appellants' claims for declaratory and injunctive relief. *See Commonwealth of Va. v. Kelly*, 29 F.3d 145, 147-48 (4th Cir. 1994) ("There being little, if any, likelihood that Kelly can succeed on the merits of his federal double jeopardy claim, and the public interests weighing heavily in favor of the Commonwealth's ability to pursue its criminal proceedings free of federal court intervention, the district court erred in staying Kelly's [state criminal trial.]" (citations omitted), *quoted in Nivens I*, 319 F.3d at 162.).

## C.

Appellants next argue that even if the decision to abstain was correct, the district court "misperceived the concept of abstention, viewing it as abdication of federal district court jurisdiction rather than postponement of its exercise." (Appellants' Br. 20.) Appellants contend that this misperception caused the district court to err in dismissing the case with prejudice, when the proper course would have been to dismiss without prejudice or stay the federal court proceedings until the completion of the state court proceedings. We disagree.

Appellants' argument relies on a number of Supreme Court decisions, including *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964), *Am. Trial Lawyers Ass'n. v. New Jersey Supreme Court*, 409 U.S. 467 (1973)(per curiam), and *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 125 S.Ct. 1517 (2005), for its contention that the district court should have retained jurisdiction over its case. These decisions, however, are inapposite to the case here.

In *England*, the district court abstained from hearing a group of chiropractors' challenge to the Louisiana Medical Practices Act because it was unclear under state law whether the act applied to chiropractors. 375 U.S. at 413. The plaintiffs then litigated their claims and lost on the merits in state court before returning to the federal district court, which dismissed the action and told the plaintiffs that if they were not satisfied with the state court's resolution of their claim, they must appeal that decision to the United States Supreme Court. *Id.* at 414-15. The Supreme Court reversed, holding that "abstention does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Id.* at 416. As to the argument that the plaintiffs could instead petition the Supreme Court for a writ of certiorari, the Supreme Court noted that was "an inadequate substitute for the initial District Court determination . . . to which the litigant is entitled to in the federal courts." *Id.*

In *American Trial Lawyers*, a group of lawyers brought an action seeking to declare New Jersey's maximum contingent fee rule unconstitutional. 409 U.S. at 467. The district court dismissed the suit because it found that the issue was primarily one of state law. *Id.* at 468. The Supreme Court again enunciated the principle that abstention does not involve the abdication of federal jurisdiction, but instead its postponement, stating that "a dismissal on grounds of abstention so as to permit a state court to pass on an issue of state law must not be with prejudice. The proper course is for the District Court to retain jurisdiction pending the proceedings in the state courts." *Id.* at 469 (citations omitted).

In *Exxon*, Saudi Basic had sued Exxon in state court, seeking a declaratory judgment that certain licensing charges were proper. *Exxon*, 125 S.Ct. at 1525. Exxon then filed suit in federal court while also asserting as counterclaims in state court the same claims it made

in federal court. *Id.* Saudi Basic filed a motion to dismiss the federal claims, which was denied by the district court. *Id.* While Saudi's appeal of the denial of its motion to dismiss was pending, the state case proceeded to trial and Exxon was awarded significant damages. *Id.* The Third Circuit held that the state court's judgment divested federal courts of jurisdiction over the case. *Id.* at 1525-26. The Supreme Court reversed, holding that although Exxon's federal claims might be barred by preclusion doctrines, the state court's judgment could not prevent a federal court's exercise of subject matter jurisdiction. *Id.* at 1527.

Appellants' reliance on these cases is misplaced because none of the decisions concerned the relevant doctrine here, which is of course *Younger* abstention. First, *Exxon* concerned the proper application of the *Rooker-Feldman* doctrine, not *Younger* abstention. *See Exxon*, 125 S. Ct. at 1526-27 (holding that the *Rooker-Feldman* doctrine is limited to complaints "of an injury caused by the state-court judgment and seeking review and rejection of that judgment" and that federal district courts lack jurisdiction to hear such claims because the Supreme Court is vested with exclusive jurisdiction of such claims); *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006) (explaining the *Rooker-Feldman* doctrine and *Exxon*'s clarification of that doctrine). In fact, the Supreme Court explicitly recognized that while *Rooker-Feldman* does nothing to bar a federal court from asserting jurisdiction over a properly invoked concurrent suit, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon*, 125 S. Ct. at 1527. Thus, *Exxon* has no bearing on the propriety of the district court's dismissal here.

*England* and *American Trial Lawyers*, on the other hand, concern abstention, but not *Younger* abstention. Rather, these cases concern *Pullman* abstention. *See RR Comm. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling. *England* detailed the proper procedure for federal courts to follow in *Pullman* cases: federal courts should retain jurisdiction over the case, but stay the proceedings so that state courts can

rule on the state law question. *England*, 375 U.S. at 416. If the state court fails to resolve the issue, however, the parties may then return to federal court for a ruling on the constitutional issue.[6]

Unlike the prototypical *Younger* case, *Pullman* cases do not involve a pending state court criminal action. For example, *Pullman* abstention is appropriate when a plaintiff brings a federal case that requires the federal court to interpret an unclear state law. *Pullman*, 312 U.S. at 498-99. Exercising *Pullman* abstention, the federal court then stays the proceeding (or certifies the question) and directs the plaintiff to first press his claim in state court. *Id.* at 501-02. *Younger* cases, on the other hand, typically involve claimants who come to federal court in an attempt to enjoin their pending state criminal prosecutions. *Younger*, 401 U.S. at 38-39. *Younger* exists to avoid an unnecessary intrusion into state proceedings and prosecutions, whereas *Pullman* exists in order to allow state courts to resolve complicated issues of state law. Thus, *Younger* allows for the state court to decide federal constitutional issues, whereas *Pullman* reserves those issues for federal court review, when necessary.

Because *Younger* is in part based on the idea that a state court is equally competent in deciding federal constitutional issues when faced with a pending prosecution, *Younger* does not contemplate those issues returning to federal court. *See* Lawrence H. Tribe, *American Constitutional Law*, § 3-30, at 202 n.5 (2d ed. 1988) ("The effect of the *Younger* rules, then, is even more drastic than that of an administrative exhaustion requirement, . . . which allows ultimate resort to a federal forum."). Moreover, *Younger* requires state courts to have adequate procedures in place for the raising of federal constitutional claims, and once those claims are heard by the state court, a federal district court will often be precluded from considering the claims on the merits. *See* 28 U.S.C.A. § 1738 (West 1994) (providing that the judicial proceedings of a state court "shall have the same full faith and credit in every court within the United States and its Territories and

---

[6]*Pullman* abstention serves two primary goals: (1) avoiding constitutional questions when their resolution is unnecessary, and (2) allowing state courts to decide issues of state law. *See Pullman*, 312 U.S. at 500. *Younger* abstention, on the other hand, is based on notions of equity and comity. *Younger*, 401 U.S. at 43-44.

Possessions as they have by law or usage in the courts of such State . . . from which they are taken"); *cf. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983) (noting in a *Colorado River* abstention case that where "a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata . . . [and the] stay order amounts to a dismissal of the suit").

Accordingly, *Younger* "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) (holding that where there are adequate state procedures, "the principles which underlie *Younger* call for dismissal of the action"); *San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998), *affirmed by* 125 S.Ct. 2491 (2005) ("Unlike *Pullman* abstention, *Younger* abstention requires dismissal of the federal claim for injunctive relief, not a stay."); *Juluke v. Hodel*, 811 F.2d 1553, 1556 (D.C. Cir. 1987) ("*Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the *dismissal* of a federal action that seeks to enjoin an ongoing prosecution in a state criminal proceeding." (internal quotation marks omitted)); *Zalman v. Anderson*, 802 F.2d 199, 207 n.11 (6th Cir. 1986) ("*Younger* abstention requires dismissal of the complaint rather than retention of jurisdiction as is the case under *Pullman* abstention."). Thus, where the relief being sought is equitable, as it always is in *Younger* cases when a criminal defendant seeks to enjoin a state prosecution, "federal courts . . . have the power to . . . decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996).

Because the outright dismissal of Appellants' declaratory and injunctive claims was proper, the only remaining question is whether the district court erred in dismissing the claims *with prejudice*. We conclude that it did not.[7]

---

[7]We note, however, that the district court's conclusion that it "lack[ed] subject matter jurisdiction" was technically incorrect. (J.A. at 1426.)

We arrive at this conclusion because a district court abstaining under *Younger* is not retaining jurisdiction, but rather refusing to take jurisdiction over the question of whether to enjoin the pending prosecution. *See Bridges v. Kelly*, 84 F.3d 470, 475 n.7 (D.C. Cir. 1996) (describing the district court's dismissal *without* prejudice as "curious" because "it seems clear . . . that appellant's complaint was being fully removed from the District Court's jurisdiction pursuant to the teachings of *Younger* and its progeny"). Thus, when a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits, *see Greening v. Moran*, 953 F.2d 301, 304 (7th Cir. 1992) (holding that "it is not appropriate to address the merits in a case to which *Younger* applies" because "[t]o say that abstention is in order . . . is to say that federal courts should not address the merits, period"), but instead because the court is denied the equitable discretion ever to reach the merits.[8] *See Lui v. Comm'n on Adult Entm't of Del.*, 369 F.3d 319, 327 (3d Cir. 2004) (holding that "a *Younger* abstention stay requires a dismissal with prejudice of the federal suit").

---

*Younger* abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). The district court error, however, was more semantic than substantive because the effect of dismissal on grounds of abstention is the same.

[8]We note that there are exceptions to this rule. For example, in *Nivens I*, Appellants claimed that North Carolina's pretrial procedures were not capable of affording them adequate protection. When encountering such a claim, a district court may properly decide to invoke *Younger*, but dismiss the case without prejudice thus allowing the plaintiffs to refile in district court if in fact the state does deny them adequate protection. That was the basis for our statement in *Nivens I* that "Appellants must raise their contentions in their current prosecution and appeal any undesirable decision before a federal district court asserts jurisdiction." *Nivens I*, 319 F.3d at 159-60. In this case, however, now that Appellants have availed themselves of North Carolina's pretrial procedure and it is clear that North Carolina provided Appellants with adequate protection, there is no possibility of a future meritorious federal claim to enjoin their pending prosecution.

We, therefore, affirm the district court's dismissal with prejudice.[9] Appellants raised their double jeopardy objection in their state prosecution but did not prevail on it. If they are convicted, they may appeal that conviction in North Carolina on double jeopardy grounds. If the North Carolina Supreme Court affirms their conviction, Appellants may then seek certiorari review in the United States Supreme Court. *See* 28 U.S.C. § 1257 (West 1993) (providing that the Supreme Court may review the "[f]inal judgments or decrees rendered by the highest court of a State in which review of a decision could be had"). If their hypothetical conviction is not overturned at that point, they may then file a motion for appropriate relief and, depending on the resolution of that motion, a habeas petition. *See* 28 U.S.C.A. § 2254 (West 1993). What Appellants may not do, however, is again ask a federal district court to enjoin their pending prosecution because it violates the Double Jeopardy Clause.

### III.

We turn now to Appellants' claims for monetary damages against Gilchrist in both his official and individual capacities. The district court's order appears to have dismissed Appellants' entire complaint on grounds of *Younger* abstention. It was improper, however, to rely on the *Younger* doctrine to dismiss Appellants' damages claims. We conclude, however, that the claims were barred against Gilchrist in his official capacity by the Eleventh Amendment and barred against him in his individual capacity by the doctrine of prosecutorial immunity. Thus, dismissal was proper.

We have held that "*Younger* does not invariably require dismissal of § 1983 damage actions." *Suggs v. Brannon*, 804 F.2d 274, 279 (4th Cir. 1986). One of the principles underlying *Younger* is that it is unnecessary for a federal court to enjoin a pending prosecution or declare a statute unconstitutional because a state court may itself

---

[9]Nothing in this opinion is meant to suggest or even remotely imply that a *Younger* dismissal is a judgment on the merits for purposes of state res judicata law. As we explained in the text, a *Younger* dismissal means that the party may not again file the same claim for injunctive relief in federal court; but a *Younger* dismissal is plainly *not* a merits-based judgment.

make either of those judgments in response to a defendant's objections during prosecution. State criminal proceedings do not, however, allow for claims of money damages by criminal defendants — such a claim is simply not available. Therefore, a "District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). Accordingly, the district court here erred in dismissing Appellants' damages claims pursuant to the *Younger* doctrine.

On appeal, North Carolina defends the district court's dismissal under different reasoning, asking us to affirm the dismissal because Appellants' claims for damages were barred by the Eleventh Amendment, prosecutorial immunity, and qualified immunity.[10] *See Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) ("It is well accepted . . . that without filing a cross-appeal . . . , an appellee may rely upon any matter appearing in the record in support of the judgment below."); *Blackwelder v. Millman*, 522 F.2d 766, 771-72 (4th Cir. 1975) (noting that a party prevailing below "may support the judgment by urging any theory, argument, or contention which is supported by the record, even though it was specifically rejected by the lower court" (internal quotation marks omitted)). We agree that Appellants' claims for damages are plainly barred by (1) the Eleventh Amendment and (2) the doctrine of prosecutorial immunity.

A.

The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign States." U.S. Const. amend. XI. The Amendment has been read to make "an unconsenting State . . . immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

---

[10]North Carolina's motion to dismiss contended that Appellants' claims for damages were barred because of immunity.

Here, Appellants made a claim for monetary damages against Gilchrist in his official capacity. Such a claim, in effect, is against the governmental entity employing Gilchrist. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that the government entity is "the real party in interest" in an official capacity suit). Thus, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). In determining whether Gilchrist is entitled to Eleventh Amendment immunity, we "must first establish whether [North Carolina's] treasury will be affected by the law suit. If the answer is yes, [Gilchrist] is immune under the Eleventh Amendment." *Harter v. Vernon*, 101 F.3d 334, 340 (4th Cir. 1996).

The answer to this question here is clear. The North Carolina Constitution provides for creation of prosecutorial districts and notes that the district attorney shall "be responsible for the prosecution on behalf of the State of all criminal actions." N.C. Const. art. IV, § 18. The district attorney prosecutes "in the name of the State all criminal actions and infractions requiring prosecution" and is undoubtedly a state official. N.C. Gen. Stat. Ann. § 7A-61 (LexisNexis 2003). Most important, North Carolina must pay "a final judgment awarded in a court of competent jurisdiction against a State employee." N.C. Gen. Stat. Ann. § 143-300.6 (LexisNexis 2003). Thus, North Carolina's treasury would be affected by the official capacity suit against Gilchrist and he is accordingly immune in his official capacity from suit under the Eleventh Amendment. *See Lynn*, 134 F.3d at 587 (applying Eleventh Amendment and barring suit against North Carolina state officials in drug tax case). We therefore affirm the dismissal of Appellants' suit against Gilchrist in his official capacity. *See Puerto Rico Adqeduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (noting that the Eleventh Amendment's "withdrawal of jurisdiction effectively confers an immunity from suit").

### B.

Appellants also named Gilchrist as a defendant in his individual capacity, a claim to which the Eleventh Amendment does not apply.

In this capacity, however, Gilchrist is entitled to absolute prosecutorial immunity. In *Imbler v. Pachtman*, the Supreme Court held "that in initiating a prosecution and in presenting the States's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. 409, 430 (1976). The Court explained that prosecutors should be afforded absolute immunity when their "activities were intimately associated with the judicial phase of the criminal process." *Id.*

Here, Appellants have been indicted and face prosecution. Their theory of damages is based on the pain and suffering caused by their indictment and pending prosecution, allegedly in violation of their double jeopardy rights. Appellants do not, however, argue that Gilchrist's actions fell outside of his traditional prosecutorial duties. For example, their complaint does not suggest that Gilchrist fabricated evidence. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993). Nor do they contend that Gilchrist violated their rights while undertaking administrative or investigatory activities. *See id.* at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (noting same). Rather, Appellants seek damages from Gilchrist because of his initiation of criminal charges against Appellants following their payment of the drug tax. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273. There is no doubt that the actions complained of in this case form the essence of Gilchrist's prosecutorial duties. Thus, he is plainly afforded absolute immunity from Appellant's claim for damages. Accordingly, we affirm the district court's dismissal of Appellants' claims. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742-43 (1982) (noting that "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action").

IV.

For the reasons stated herein, we affirm the district court's dismissal with prejudice.

*AFFIRMED*