**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 23-1958**

―――――――――

ERIE INSURANCE EXCHANGE; ERIE INSURANCE COMPANY; ERIE INSURANCE PROPERTY & CASUALTY COMPANY; ERIE FAMILY LIFE INSURANCE COMPANY; ERIE INSURANCE COMPANY OF NEW YORK; FLAGSHIP CITY INSURANCE COMPANY,

   Plaintiffs – Appellants,

v.

THE MARYLAND INSURANCE ADMINISTRATION; KATHLEEN A. BIRRANE,

   Defendants – Appellees.

―――――――――

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge. (1:23-cv-01553-JRR)

―――――――――

Argued: May 7, 2024        Decided: June 18, 2024

―――――――――

Before GREGORY, HEYTENS, and BENJAMIN, Circuit Judges.

―――――――――

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Gregory and Judge Benjamin joined.

―――――――――

**ARGUED:** Alex Jonathan Brown, SHAPIRO SHER GUINOT & SANDLER, Baltimore, Maryland, for Appellants. John Van Lear Dorsey, MARYLAND INSURANCE ADMINISTRATION, Baltimore, Maryland, for Appellees. **ON BRIEF:** Michael S. Bullock, SHAPIRO SHER GUINOT & SANDLER, Baltimore, Maryland, for Appellants. Anthony G. Brown, Attorney General, Betty S. Diener, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

TOBY HEYTENS, Circuit Judge:

An insurance company is facing an enforcement action by a state regulatory agency. Asserting the agency has violated state and federal law and thus tainted the upcoming administrative proceeding, the company asked a federal district court to step in. But "the normal thing to do when federal courts are asked to enjoin pending proceedings" like these is "not to issue such injunctions." *Younger v. Harris*, 401 U.S. 37, 45 (1971). Like the district court, we see no reason to depart from that norm here. We thus affirm the district court's dismissal of the insurance company's complaint.

I.

In 2021, the Maryland Insurance Administration (MIA) opened "two separate administrative investigations" into Erie Insurance Company after receiving complaints that Erie was "engaged in racial and geographic discrimination." JA 9–10. The first investigation broadly examined Erie's "market conduct." JA 10. The second investigation focused on the "specific . . . allegations" in the individual complaints. *Id.* The two investigations were handled by different divisions within the MIA.

Between 2021 and 2023, the MIA repeatedly advised Erie that the individual complaints investigation "was subject to a *de facto* 'stay,' or on hold, pending completion of the" market conduct investigation. JA 10. Still, Erie provided written responses to three sets of questions about the individual complaints investigation while the market conduct investigation "was in full swing." JA 11. Erie also understood that there would be "further discussions and interviews" with the MIA about the individual complaints investigation once the market conduct investigation was finished. *Id.*

2

In 2022 and 2023, the MIA received letters from the NAACP asking about the progress of each investigation, and it sent back letters in response. In both responses, the MIA confirmed that the investigations were "ongoing." JA 92, 95. The MIA's second letter also advised that, under Maryland law, all information about its market conduct investigation—including "the materials provided to the MIA during the course of the investigation"—would remain "confidential" while the investigation was pending. JA 95.

A few months later, the division responsible for the individual complaints investigation issued "four public Determination Letters" that Erie had violated the state's insurance laws. JA 12. Those letters referenced documents obtained by the MIA as part of the market conduct investigation, for which the MIA had not issued a report or determination letter.

Erie exercised its statutory right to a hearing on all four determination letters, and the MIA granted each request. In its initial letters granting the hearing requests, the MIA said that the materials "that were considered as part of the complaint investigation process w[ould] be submitted to the hearing officer to become part of the evidentiary file" but that Erie could "object to having a document accepted as evidence" by filing an objection with the hearing officer "before the hearing." JA 199–206. In a follow-up letter sent after Erie filed this lawsuit, the MIA said it would not send the documents to the hearing officer before the hearing and would instead submit evidence during the hearing itself.

Shortly after the MIA granted its requests for administrative hearings, Erie sued the MIA and its commissioner in federal district court, asserting due process claims under

3

42 U.S.C. § 1983 and violations of Maryland state law.[1] The complaint asked the district court to declare that the determination letters were "unlawful," to enjoin the defendants "from disseminating the Determination Letters to any person or entity," and to require the defendants to "publicly withdraw" them. JA 42, 45. That same day, Erie requested a temporary restraining order or a preliminary injunction "enjoin[ing]" the MIA from "us[ing] . . . the unlawful Determination Letters and the confidential Market Conduct Materials" in "any Administrative Hearing" related to the determination letters. JA 52–53.

The district court convened a teleconference, during which it set a hearing on Erie's motion and directed the parties to submit pre-hearing briefs "on *Younger* and *Burford* abstention," as well as "any other briefing re the motion." JA 3. After reviewing the submitted materials, the court determined no hearing was necessary because "the issues raised can be resolved on the parties' submissions alone." JA 228. The court said it was "going to abstain from exercising jurisdiction under both the *Burford* and *Younger* abstention doctrines," "deny the PI Motion on grounds of abstention," and "dismiss the complaint without prejudice." JA 246; see JA 255 (order dismissing complaint without prejudice).

## II.

Erie first asserts that the district court committed reversible error by denying its motion for a preliminary injunction without holding a hearing on that motion. That

---

[1] The complaint lists six plaintiffs, all of which are insurance companies associated with Erie. The presence of multiple plaintiffs makes no difference to this appeal.

4

argument fails because it misapprehends the case's procedural posture.

"The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit" so as "to preserve the court's ability to render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quotation marks removed); see *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (describing the purpose of a preliminary injunction as "protect[ing] the status quo and prevent[ing] irreparable harm during the pendency of a lawsuit"). But a preliminary injunction plays no role in preserving the status quo once a lawsuit has reached final judgment, and this lawsuit ended the moment the district court dismissed Erie's complaint. Accord *Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1450 (9th Cir. 1992) (dismissing appeal from denial of preliminary injunction as moot where the district court later entered summary judgment against the party whose motion was denied). Erie also has not asked this Court to grant an injunction pending its appeal of the district court's dismissal order. See Fed. R. App. P. 8(a)(2). This case thus comes to us as an appeal of the district court's final decision dismissing Erie's complaint, not as an appeal of an interlocutory order denying interim injunctive relief.

True, it does not appear that the defendants ever formally moved to dismiss Erie's complaint under Federal Rule of Civil Procedure 12. But Erie does not ask us to reverse the district court's judgment on that ground. And at any rate, "[e]ven if a party does not make a formal motion," a district court may dismiss a complaint on its own motion so long as "the procedure employed is fair to the parties." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021) (quoting Wright & Miller, 5B Fed. Prac. & Proc.

Juris. § 1357). That is exactly what happened here. Before it ruled, the district court directed the parties to "submit briefing on *Younger* and *Burford* abstention" (JA 3), which gave Erie "notice of the court's intention" to potentially dismiss the case and the "opportunity to amend the complaint or otherwise respond." *Robertson*, 989 F.3d at 291. Erie then submitted a "bench memorandum on abstention," attaching four exhibits not previously included in the complaint. JA 176. No further procedure was required.

Finally, as much as Erie's briefs can be read as suggesting that a district court must always conduct an evidentiary hearing or make findings of fact before dismissing a complaint based on abstention, that argument fails. Both the Supreme Court and this one have affirmed district court decisions that abstained under Federal Rule of Civil Procedure 12(b)(6). See, *e.g.*, *Kugler v. Helfant*, 421 U.S. 117, 125 n.5 (1975); *Nivens v. Gilchrist* (*Nivens II*), 444 F.3d 237, 240, 247 n.7 (4th Cir. 2006). And—of course—a district court applying Rule 12(b)(6) need not hold an evidentiary hearing and *cannot* make factual findings. See, *e.g.*, *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. ---, 2024 WL 2751216, at *10 (2024).

### III.

We turn to the merits of the district court's abstention ruling. Because the district court dismissed Erie's complaint, we must assume the truth of Erie's well-pleaded "factual allegations." *Kugler*, 421 U.S. at 125 n.5. We review the district court's ultimate decision to abstain "for abuse of discretion," while remembering that "whether a case satisfies the basic requirements of abstention constitutes a legal question subject to de novo review." *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015) (brackets and quotation

6

marks removed). Applying those standards, we conclude the district court committed no reversible error in abstaining under *Younger v. Harris*, 401 U.S. 37 (1971). We thus do not reach the district court's alternative holding that abstention was also warranted under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

A.

Like all abstention doctrines, *Younger* abstention "is an exception to the general rule that federal courts must decide cases over which they have jurisdiction." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). That flavor of abstention is based on two deep-rooted concepts. The first comes from traditional equity practice—the idea that "courts of equity should not act" to restrain another proceeding "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44. The second and "even more vital consideration" is "the notion of 'comity,'" including the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44.

Although the *Younger* doctrine can be intricate, many of its components are not in dispute here. To begin, Erie does not challenge the district court's conclusion that the type of state proceedings it asked the district court to enjoin are "quasi-criminal" and thus "fall within" a "categor[y]" that can "trigger *Younger* abstention." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). Erie also does not contest the district court's determination that two of the three "*additional* factors" needed for *Younger* abstention to apply to proceedings like these are present. *Id.* at 81.

7

Erie does, however, take aim at two of the district court's conclusions. *First*, Erie argues that one final "basic requirement[]" for *Younger* abstention is not present here. *VonRosenberg*, 781 F.3d at 734. *Second*, Erie insists that—even if the district court "had [the] authority to abstain"—it exceeded its discretion in exercising that authority because this case falls within a category of situations in which "*Younger* left room for federal equitable intervention." *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 327 n.3 (4th Cir. 2022) (emphasis removed) (first quote); *Kugler*, 421 U.S. at 124 (second quote). We are unpersuaded by both arguments.

## B.

*Younger* only permits abstention in deference to proceedings that will "provide[ ] an adequate opportunity to raise constitutional challenges." *Air Evac*, 37 F.4th at 93. As the party asking a federal court to intervene, Erie bears "the burden" of showing that it lacks such an opportunity here because "state procedural law bar[s] presentation of its claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (alterations removed). Because this question implicates "whether the district court had authority to abstain," we review this issue de novo. *Johnathan R. by Dixon*, 41 F.4th at 327 n.3 (emphasis removed). Like the district court, we conclude Erie failed to carry its burden.

Erie's argument stumbles right out of the gate. Maryland's highest court has held "that the MIA is . . . fully competent to address issues regarding the constitutionality of statutes or ordinances, whether as applied or on its face." *United Ins. Co. of Am. v. Maryland Ins. Admin.*, 144 A.3d 1230, 1240 n.10 (Md. 2016). Under Maryland law, then, Erie is free to raise its federal law claims in the administrative hearings that it has already

8

been granted. If Erie is dissatisfied with the treatment it receives before the MIA, it may then seek review—including of constitutional issues—in the Maryland state courts. See Md. Code Ann., Ins. § 2-215.

Erie responds that its opportunity to raise constitutional claims during the hearing itself will come too late. We find its arguments unpersuasive.

To begin, Erie insists that the MIA has already violated its statutory and constitutional rights by first considering and later including confidential information in its publicly issued determination letters. The purpose of an injunction, however, is to prevent future harms rather than redress those that have already occurred. See generally *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–11 (1983). True, Erie seeks an order directing the MIA to withdraw its already issued letters. But there is nothing preventing Erie from seeking such relief from the hearing officer and the Maryland courts.

Erie also asserts that "even transferring the" underlying administrative materials "to the hearing officer will, in and of itself, create new, irreparable injury" by exposing its private information "to the general public" in violation of some combination of Maryland statutory law, longstanding Maryland administrative practice, and its federal constitutional rights. Erie Br. 29. This is so, Erie says, because Maryland law requires the hearing officer "to make the MIA's entire file part of the hearing record," which will then expose the information to broad scrutiny via "civil litigation, subpoenas to the hearing officer and Public Information Act requests." *Id*.

That argument fails too. Even if Erie correctly describes how proceedings before the hearing officer typically work, Maryland law provides mechanisms that permit it to

9

raise its constitutional objections to any further public disclosure of the allegedly confidential information. Most relevant here, the hearing officer may use the Maryland Rules of Civil Procedure "as a guide for resolving issues regarding the conduct of the hearing." Md. Code Regs. 31.02.01.07(H). Under those rules, the hearing officer can prevent public disclosure by issuing protective orders and orders to seal. See Md. Rule 2-403 (protective orders); Md. Rule 20-201.1(d) (orders to seal). And if the original complainants intervene in the administrative hearing—a particular concern of Erie's—the hearing officer can order the complainants not to "disclose[ ]" Erie's "trade secret[s]" or "commercial information," or order that "discovery be conducted with no one present except persons designated by the" hearing officer. Md. Rule 2-403(a)(6), (8). Finally, as already noted, Erie has a right to seek review of the MIA's decisions in state court. See Md. Code Ann., Ins. § 2-215.

Erie counters that Maryland law only gives the hearing officer "the *option* of using" those various privacy-protecting tools and says it needs federal court intervention to ensure "certainty against public disclosure." Erie Reply Br. 13–14. That argument gets the principles of "Our Federalism" reflected in *Younger* backwards. 401 U.S. at 44. *Younger* is grounded on the "assump[tion]" that "absen[t] . . . unambiguous authority to the contrary," "state procedures *will* afford an adequate remedy." *Pennzoil Co.*, 481 U.S. at 15 (emphasis added). This is particularly so when, as here, "a litigant has not attempted to present" its "federal claims" to a state-provided adjudicator before seeking federal court intervention. *Id.*

Still, Erie worries that the hearing officer might improperly decline to protect the

10

privacy of its information and thus put Erie in the "impossible position" of having to "stand on [its] confidentiality" argument and "not defend" itself at the hearing and then "take [the issue] up on appeal after [it] lose[s]." Oral Arg. 7:55–8:44. But litigants face that sort of hard choice all the time, and the fact that Erie fears the MIA "will likely decide a constitutional issue in a way contrary to what [Erie] believe[s] the Constitution mandates is not a sufficient basis to avoid application of *Younger* abstention." *Nivens v. Gilchrist* (*Nivens I*), 319 F.3d 151, 158 (4th Cir. 2003). What matters is that Erie will have the chance to make its arguments to the hearing officer and later (if necessary) to the "presumptively competent" Maryland state courts. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). That is all *Younger* demands.[2]

## C.

Even when "the basic requirements" for *Younger* abstention are present, there are a few carefully limited circumstances where a district court "may disregard *Younger's*" otherwise-ironclad "mandate." *VonRosenberg*, 781 F.3d at 734 (quotation marks removed) (first quote); *Nivens II*, 444 F.3d at 241 (second quote). As with other "decision[s] rest[ing] on evaluation of equitable considerations or other traditionally discretionary factors," *Lord & Taylor, LLC v. White Flint, L.P.*, 780 F.3d 211, 217 (4th Cir. 2015), we review a district court's bottom-line judgment about whether any of these "exceptions" apply for abuse of

---

[2] Erie's assertion that it needs federal court intervention to prevent further violations of Maryland law fails for another reason as well. Abstention doctrines aside, federal courts have no authority to "instruct[ ] state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

11

discretion, *Air Evac*, 37 F.4th at 93. At the same time, we remain mindful that any decision reflecting "an error of law" is "by definition an abuse of discretion." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002). Applying those standards here, we continue to see no cause to disturb the district court's decision.

Erie faults the district court for not addressing each of what it says are "five separate, dispositive exceptions" to *Younger* abstention. Erie Br. 42. But it is the district court, not Erie, that has the law right. Under this Court's precedent, there are "*three* exceptions to the court's duty to abstain," *Air Evac*, 37 F.4th at 96 (emphasis added); accord *Kugler*, 421 U.S. at 124 (listing same three exceptions), and the district court acknowledged each of them in rejecting Erie's arguments.

On appeal, Erie primarily invokes the third *Younger* exception, which covers "extraordinary circumstances or unusual situations." *Air Evac*, 37 F.4th at 96 (quotation marks removed). In essence, Erie argues that—rather than follow its normal procedure and allow the investigation to unfold—the MIA, under the direction of a new Governor "who has made addressing racial discrimination a priority," "bowed to political pressure" from the NAACP. Erie Br. 19, 34. As support, Erie points to the sequence of events between the filing of the complaints against it in 2021 and the publication of the determination letters in 2023. Erie asserts the MIA's actions violated the Maryland Insurance Code and deprived it of an adequate opportunity to participate in the investigation. This, Erie says, reveals the MIA's bias against it, and creates an "actual impediment to" MIA's "ability to address the federal issues" in the administrative proceedings. *Air Evac*, 37 F.4th at 100. Like the district court, we reject that argument.

12

Erie relies most heavily on this Court's decision in *Air Evac*, which affirmed a district court's grant of a preliminary injunction despite an argument that it needed to abstain under *Younger*. See *Air Evac*, 37 F.4th at 93. To be sure, there are some high-level similarities between that case and this one: in both, a regulated entity sought an injunction to prevent state-law enforcement proceedings that it claimed were motivated by political pressure. See *id.* at 100–01. But *Air Evac* repeatedly cited the "deferential standard of review" in affirming the district court's conclusion that extraordinary circumstances were present in that case (*id.* at 93, 101), and here the district court reached the opposite conclusion. *Air Evac* also emphasized "that the path to extraordinary circumstances is exceedingly narrow," that "there is nothing inherently wrong with a regulatory agency communicating with one of its citizens," and that its decision "should not be construed as a license to broadly interpret the extraordinary circumstances exception." *Id.* at 100–02.

Erie also cites *Gibson v. Berryhill*, 411 U.S. 564 (1973), but that decision does not help it either. In *Gibson*, the Supreme Court affirmed a district court's decision not to abstain under *Younger* where a board "composed solely of optometrists in private practice" aimed "to revoke the licenses of all optometrists in the State who were employed by business corporations." 411 U.S. at 578. Citing two previous decisions, the Court reiterated "that those with [a] substantial pecuniary interest in" a legal proceeding "should not adjudicate" it. *Id.* at 579.

Despite admitting that this case—unlike *Gibson*—presents no allegations "of bias due to" a regulator's "pecuniary interests," Erie insists that abstention is unwarranted because "[t]he regulators here are alleged to be biased" for non-pecuniary reasons. Erie

13

Br. 39. Erie asserts that because "the hearing officer is appointed by the Commissioner" of the MIA "and serves at the Commissioner's pleasure, there is a 'possibility' that the hearing officer will be biased by his or her interest in preserving his or her job by not finding the Commissioner has acted in a biased or improper manner." *Id.* at 43. In so arguing, however, Erie ignores *Kugler v. Helfant*, 421 U.S. 117 (1975), a Supreme Court decision issued less than two years after *Gibson* that rejected a claim of non-pecuniary bias much like the one Erie presses here.

In *Kugler*, a state court judge asserted he could not get a fair trial in New Jersey state court because the State's "Chief Justice and other members of the [state] Supreme Court" played a direct role in coercing his grand jury testimony. 421 U.S. at 121. Because the district court had dismissed the complaint under Rule 12(b)(6), the Court assumed the complaint's "factual allegations" were all true. *Id.* at 125 n.5. The Court acknowledged that "the State Supreme Court, and particularly its Chief Justice"—who were accused of "unlawfully inject[ing] [themselves] into the prosecution of the charges against" the plaintiff—were "vested with considerable administrative authority over the trial court that w[ould] initially determine" the plaintiff's "federal constitutional claims." *Id.* at 127. The Court also allowed for the possibility "that there might be a judge in the State who, in an effort to curry favor or to avoid administrative transfer to a less desirable assignment, would decide the case with an eye to the supposed attitudes of his superiors in the judicial hierarchy." *Id.* Yet the Supreme Court still concluded that the district court was right to abstain because "the New Jersey judicial system provide[d] procedural safeguards to guarantee that" the plaintiff would "not be denied due process of law in the state trial or

14

appellate process." *Id.* at 128. So too here, where the administrative procedures discussed above preserve Erie's ability to get a fair shake. See Part III(B), *supra*; see also Md. Code. Ann., State Gov't § 10-219(a)(1)(i) (forbidding the hearing officer from "communicat[ing] ex parte directly or indirectly regarding the merits of any issue in the case" with "any party to the case or the party's representative or attorney").[3]

Turning its attention from claims of bias back to the hearing procedures, Erie insists there is no way to avoid due process problems because "the hearing officer will be irreparably tainted by [the officer's] review of the confidential and privileged" materials that Erie thinks are inadmissible and must be protected. Erie Br. 42. But the only authorities Erie cites to support that striking assertion are non-controlling and far afield, and a moment's reflection reveals why Erie's argument must be wrong. Trial judges and other adjudicators *constantly* resolve questions about whether materials are privileged or otherwise inadmissible, and they must often see the underlying information in making such determinations. Yet no one thinks that this fact, standing alone, is enough to require their disqualification under the Due Process Clause. Indeed, even a trial judge who "was reversed in earlier rulings" is not "disqualified from sitting in a retrial." *Withrow v. Larkin*, 421 U.S. 35, 49 (1975) (quotation marks removed).

---

[3] To the extent that Erie's assertions of "improper purpose" (Erie Br. 46) are also a vague attempt to invoke *Younger*'s first exception—which covers "bad faith or harassment," *Air Evac*, 37 F.4th at 96—Erie has not done enough to preserve that issue for our review. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). At any rate, "[t]here is no case since Younger was decided in which the [Supreme] Court has found" the first *Younger* exception "was applicable." Wright & Miller, 17B Fed. Prac. & Proc. Juris. § 4255 (3d ed. 2023).

Finally, Erie fares no better in its brief invocation of *Younger*'s second exception. Erie does not assert that the Maryland laws it is accused of violating are "flagrantly and patently violative of express constitutional provisions," which is how that exception normally works. *Air Evac*, 37 F.4th at 96; accord *Nivens II*, 444 F.3d at 241 (same). Instead, Erie asserts that the charging documents that give rise to the administrative proceedings—that is, the four "Determination Letters"—"are on their face plainly invalid due to their overt reliance on Erie's confidential Market Conduct Materials." Erie Br. 46–47 (emphasis and quotation marks removed).

That argument also fails to convince. For one thing, the only decision that Erie cites in support of this argument addressed a different issue—whether state enforcement proceedings that are alleged to be preempted by federal law may be enjoined despite *Younger*—and it left that question undecided. See *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 367 (1989). And even if the MIA violated the law in issuing the determination letters, the Supreme Court has made clear that previous "error[s]" of "state or federal law" do not, on their own, justify diverging from ordinary abstention principles. *Hicks v. Miranda*, 422 U.S. 332, 352 (1975). Were it otherwise, "the rule of *Younger v. Harris*" could easily "be swallowed up by its exception." *Id.* What matters is that, even if Erie is right about what happened in the past, "we cannot conclusively say" "without further factual inquiry" that future proceedings will not afford it constitutionally adequate process. *NOPSI*, 491 U.S. at 367. "[A]nd what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *Id.* For this reason too, the district court committed no reversible

16

error in deciding to abstain under *Younger*.

\*    \*    \*

The district court's judgment is

*AFFIRMED*.