**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1242**

---

ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP

        Plaintiff - Appellant

v.

BEAUFORT COUNTY; ERIC GREENWAY, Beaufort County Administrator; HILLARY AUSTIN, Zoning and Development Administrator for Beaufort County

        Defendants - Appellees.

---

Appeal from the United States District Court for the District of South Carolina at Beaufort. Bruce H. Hendricks, District Judge. (9:21−cv−01517−BHH)

---

Argued: May 8, 2024                           Decided: June 21, 2024

---

Before DIAZ, Chief Judge, WILKINSON, Circuit Judge, and MOTZ, Senior Circuit Judge.

---

Remanded with directions by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Diaz and Senior Judge Motz joined.

---

**ARGUED:** Jeffrey Scott Tibbals, BYBEE & TIBBALS, LLC, Mount Pleasant, South Carolina, for Appellant. Scott Dean Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, PLLC, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Evan P. Williams, BYBEE & TIBBALS, LLC, Mount Pleasant, South Carolina, for Appellant. O. Edworth Liipfert III, Beaufort, South Carolina, for Appellees.

WILKINSON, Circuit Judge:

Adams Outdoor Advertising Limited Partnership constructs, manages, designs, and repairs billboards across the Midwest, Northeast, and Southeastern United States. But not all jurisdictions in those regions appreciate billboards like Adams's. Beaufort County has sought to phase out billboards within its borders by prohibiting the construction of new billboards and restricting structural repairs of old ones.

Adams and Beaufort County clashed over the county's billboard policy twice in the spring of 2021. First, Adams was issued a criminal citation for performing structural repairs on two old billboards without seeking authorization. Second, Adams filed eleven applications requesting permits to construct new commercial billboards with digital displays, each of which was denied.

Based on these two events, Adams sought to challenge Beaufort County's local ordinance regulating billboards, along with several other local sign regulations. The district court dismissed all of Adams's claims with prejudice. The claims related to the criminal citation were dismissed under the *Younger* abstention doctrine, and those related to the permit denials were dismissed for lack of jurisdiction. We agree with each of the district court's dismissal determinations. But the claims dismissed for lack of jurisdiction ought to have been dismissed without prejudice, and so we remand those claims with the instruction that their dismissal be amended to dismissal without prejudice.

I.

We begin with the claims related to the criminal citation—the first, third, fifth and eighth causes of action in the complaint. Each of these claims challenges the portion of the

Beaufort County Community Development Code that Adams was accused of violating when it repaired two billboards in April 2021: § 5.6.50(E) (the "Repair Provision").[1] The district court dismissed the Repair Provision claims after Adams consented to abstention under *Younger v. Harris*, 401 U.S. 37 (1971).

On appeal, Adams does not argue that the district court should not have abstained from adjudicating the Repair Provision claims. Instead, it argues that the district court ought to have stayed those claims rather than dismissing them. For the reasons that follow, we find this argument unpersuasive.

### A.

The challenged Repair Provision stipulates the types of repairs to old billboards that are and are not permitted in Beaufort County. Signs experiencing "normal" wear-and-tear can be maintained only by "painting or refinishing the surface of the sign face" or via "minor" hurricane safety modifications. § 5.6.50(E)(2). No structural or substantive maintenance is permitted, and signs must be removed once they become structurally unsound. *Id.* There is an exception, however, when signs have suffered damage in excess of normal wear—say, from unusually strong winds. Such signs may be structurally repaired upon authorization from the county, so long as the damage to the sign was less than fifty percent of what it would cost to replace the sign entirely. § 5.6.50(E)(4)(c). The Repair

---

[1] As will become important when we discuss the claims related to the permit denials, the Community Development Code was amended shortly after Adams received its criminal citations. But Adams challenges the version that was in effect when it received the citation. In this section, we consider only that version and use the section numbers as they appeared in April 2021.

Provision makes clear that such authorization must be sought and received before any such structural repair work is undertaken, *see* § 5.6.50(E)(4)(a)–(b).

In April 2021, Beaufort County criminally cited Adams for violating the Repair Provision when Adams undertook the unauthorized structural repair of two billboards that it claimed had been damaged by strong winds.

That criminal citation against Adams is still being processed in state court. The Beaufort County Magistrate's Court held a trial in July 2021 and issued a verdict finding Adams and one of its managers guilty of violating the Repair Provision. Adams appealed that verdict and since then the criminal case has been winding its way through South Carolina's appeals process as Adams and Beaufort County continue to litigate the validity of the convictions.

While state proceedings were pending, Adams also filed a complaint in federal district court that, among other things, attacked the Repair Provision it had been accused of violating. Adams challenged the Repair Provision as inconsistent with state law (count one), governed by vague standards that fail to provide fair notice (count three), imposing an unconstitutional prior restraint (count five), and having been applied unconstitutionally against Adams (count eight). *See* J.A. 26, 32, 47, 55.

Beaufort County moved to dismiss those four claims relating to the Repair Provision under *Younger* abstention. The *Younger* abstention doctrine counsels that federal courts should abstain from adjudicating a case if doing so would interfere in a pending state criminal proceeding in which the complaining litigant could adequately press his cause. *See Younger v. Harris*, 401 U.S. 37, 44–45 (1971). In its motion, Beaufort County pointed

4

out that it was enforcing the Repair Provision against Adams in state court proceedings in which Adams has had the opportunity to raise any federal constitutional challenges.

In its response to Beaufort County's motion to dismiss, Adams consented to the application of *Younger* to its claims related to the Repair Provision. *See* J.A. 189. It further "agree[d] to withdraw th[o]se claims without prejudice" and asked for "leave to file an amended pleading to reflect this withdrawal." *Id.* at 189–90.

The district court interpreted Adams to be agreeing not only to the application of *Younger* abstention, but also to dismissal of the Repair Provision claims. *See Adams Outdoor Advert. Ltd. P'ship v. Beaufort County*, No. CV 9:21-1517-BHH, 2023 WL 1801827, at *2 (D.S.C. Feb. 7, 2023). It thus granted Beaufort County's motion to dismiss with respect to those claims.

The district court also gave Adams leave to file a second amended complaint within fourteen days. But that leave was conditioned upon changes the court wanted to see regarding claims related to the permit denials and was seemingly unrelated to the Repair Provision claims dismissed under *Younger*. *See id.* at *7. In any event, Adams did not file that amended complaint. Nor at any point in the proceedings below did it ask the district court to stay claims relating to the Repair Provision rather than dismissing them. After the fourteen-day amendment window had elapsed, the district court entered an order dismissing the Repair Provision claims with prejudice.

B.

A district court abstaining under *Younger* must dispose of the claims in different ways depending on the relief requested. When *Younger* abstention is invoked against

5

claims seeking only injunctive or declaratory relief, those claims are usually (as was done here) dismissed with prejudice. *See Nivens v. Gilchrist*, 444 F.3d 237, 247–48 (4th Cir. 2006). But when the plaintiff requests monetary damages with respect to a claim, a "District Court has no discretion to dismiss rather than to stay" that claim. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). Damages for federal constitutional violations are not generally available in state criminal proceedings, and so the federal courts will allow a plaintiff to return to request such damages after the state criminal proceedings against him have concluded. *See id.* at 202–03. Finally, when a party "seeks not only injunctive and declaratory relief but money damages as well," we have held that "the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory claims." *Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir. 1989).

Now, on appeal, Adams argues for the first time that its four Repair Provision claims should have been stayed rather than dismissed with prejudice. In support, Adams points out that its complaint includes a request for monetary damages in addition to claims for injunctive and declaratory relief.

But Adams never asked for a stay below. District courts rely on the parties before them to ask for the outcome they want. When a party does not ask for a particular outcome below, we do not look kindly at arguments made on appeal that the district court should have intuited the party's wishes. *Malbon v. Pa. Millers Mut. Ins. Co.*, 636 F.2d 936, 941 (4th Cir. 1980) ("It is elementary that an issue not raised below will not, absent extraordinary circumstances . . . be considered on appeal.").

6

Moreover, Adams's complaint was not even sufficiently clear about which claims Adams was seeking damages such that the district court could have been expected to guess that a stay here was required. Following nineteen prayers for declaratory and injunctive relief—most of which specified whether they were challenging the Repair Provision or other parts of the county's sign ordinance—the complaint simply stated a general request for monetary relief under § 1983. *See* J.A. 61. Which claims Adams believed merited monetary relief was left unspecified. And whether the Repair Provision claims were among them was known only to Adams.

Given that utter lack of clarity and the absence of responsiveness to the trial court's instructions, we think the district court acted within its discretion in declining to stay the *Younger* claims. We note, however, that Adams is not foreclosed from pursuing these claims in state court. A *Younger* dismissal is not a "judgment on the merits for purposes of state res judicata law." *Nevins*, 444 F.3d at 248 n.9. If the state criminal proceedings against Adams terminate such that Adams's claims for damages are viable, Adams can bring its § 1983 claims in state court alongside the claims dismissed for jurisdictional defects which we discuss below.

## II.

We turn now to the remaining claims—the second, fourth, sixth, seventh, and ninth causes of action in the complaint—which challenge provisions of Beaufort County's Community Development Code beyond the Repair Provision at issue in the criminal proceedings against Adams. The district court held that it lacked jurisdiction to consider

7

these claims, a determination which we review *de novo. See Covenant Media of SC, LLC v. City of N. Charleston*, 493 F.3d 421, 427–28 (4th Cir. 2007).

## A.

Before addressing the jurisdictional problems, we must set forth the circumstances surrounding Beaufort County's denials of Adams's eleven permit applications, which form the core of Adams's grievances.

As detailed below, when Adams submitted those applications in April 2021, signs in Beaufort County were still regulated under the version of the Community Development Code that we shall call the "Old Sign Ordinance". But that was soon to change. In May, Beaufort County published its intention to amend the Old Sign Ordinance (to what would eventually become the "Amended Sign Ordinance"). Shortly thereafter, Adams's April applications were deemed incomplete and returned to Adams. Within a week, Adams filed completed applications, each of which Beaufort County denied.

## 1. The Old Sign Ordinance

Beaufort County, like many jurisdictions around the country, has long regulated outdoor signs and advertisements. The Old Sign Ordinance provided both substantive regulations pertaining to various sign types, *see* §§ 5.6.10–5.6.190, and procedural guidelines that governed a permitting process by which to apply for permission to construct, repair, or relocate a sign, *see* § 7.2.40.

Different sign types carried different restrictions under the Old Sign Ordinance. Most sign types required a permit and were subject to size and location restrictions. For example, freestanding signs like billboards were limited to a maximum height of ten feet

8

and a maximum width of fifteen feet. *See* § 5.6.120(B). But some signs were prohibited altogether, including off-premises commercial billboards. *See* § 5.6.20(A).

The Old Sign Ordinance also imposed general aesthetic restrictions. Most importantly for our purposes, "LED Message board signs" were not permitted, "except for schools, houses of worship, gasoline price signs, and signs advertising films and live entertainment which change on a regular basis." § 5.6.30(C)(1)(f).

### 2. Adams's First Applications

In late April 2021, Adams submitted eleven permit applications proposing billboards clearly prohibited by the Old Sign Ordinance. Not only did the permits request permission to build brand new commercial billboards (prohibited under § 5.6.20(A)), they proposed billboards with LED lights (prohibited under § 5.6.30(C)(1)(f)). Moreover, Adams's fifteen-foot-tall and twenty-five-foot-wide billboards far exceeded the maximum dimensions allowed for freestanding signs. In short, the applications could not possibly have been approved.

The applications submitted by Adams were not only defiant but also incomplete. They were missing (among other things) information about the properties on which the signs were to be built, including the names and contact information for the properties' owners.

### 3. The Amended Sign Ordinance and Adams's Subsequent Applications

Meanwhile, the Beaufort County Council had resolved to amend the Old Sign Ordinance to ensure its constitutional soundness. On May 24, 2021, the Beaufort County Council conducted a first reading of the Amended Sign Ordinance that, among other things,

simplified the provisions prohibiting off-premises commercial billboards and altered the exceptions to the no-LED-signs rule to depend on location ("*on a parcel containing* a school, house of worship . . .") rather than content ("*for* schools, houses of worship . . ."). On May 25, the Council advertised in the *Beaufort Gazette* its intention to hold a public hearing on June 14, at which the Amended Sign Ordinance would be considered.

The Beaufort County Zoning and Development Administrator returned the incomplete applications to Adams the on May 26, noting that it could not process any applications that were not complete. On May 27, two days after notice of the public hearing was published, Adams submitted the first completed application. It submitted the other ten a few days after that.

As advertised, a public hearing on the Amended Sign Ordinance was held on June 14, where it underwent a second reading. In South Carolina, however, zoning ordinances require three readings before they can be adopted. The third and final reading took place on July 26, and the Amended Sign Ordinance was adopted.

Between the second and third readings, Beaufort County denied Adams's eleven applications based on the still-pending Amended Sign Ordinance (ASO). It provided the same explanation for each of the denials, citing several grounds for why the proposed signs were not in compliance: First, as in the Old Sign Ordinance, new off-premises commercial billboards were not permitted under ASO §§ 5.6.20(A) and 5.6.50(A). Second, digital displays (such as LEDs) were permitted only on parcels containing schools, houses of worship, gas stations, or theaters under ASO § 5.6.30(C)(1)(f), and none of the relevant parcels had any such establishments; LED displays were also never permitted on

10

commercial billboards under ASO § 5.6.50(A). Third, the dimensions of the proposed signs exceeded the maximum dimensions permitted for freestanding signs under ASO § 5.6.120 (which was identical to the dimension requirements of the Old Sign Ordinance). Finally, some of the information on the applications was determined to be inaccurate, and they were therefore subject to denial under ASO § 7.2.40(C)(4)(a).

Adams appealed the denials to the Beaufort County Zoning Board of Appeals, which ultimately upheld all eleven denials on the ground that the proposed signs did not comply with the dimension requirements.

B.

As noted above, Beaufort County applied the Amended Sign Ordinance to deny Adams's applications, even though those amendments had not yet become final. Beaufort County claims that it was permitted to do so under South Carolina's pending ordinance doctrine, first articulated in *Sherman v. Reavis*, 273 S.C. 542 (1979). Under the pending ordinance doctrine, a municipality can properly refuse a land-use permit "when such use is repugnant to a pending and later enacted zoning ordinance." *Id.* at 545.

Adams, however, did not want to challenge the Amended Sign Ordinance. Its complaint took aim exclusively at the Old Sign Ordinance, and Adams turned down the opportunity to amend its complaint to substitute the Amended Sign Ordinance in its place. To that end, Adams argues that the pending ordinance doctrine is inapplicable, and that Beaufort County should instead have assessed Adams's applications under the Old Sign Ordinance.

11

Adams makes several arguments that the pending ordinance doctrine should not apply here, but none are availing. First, Adams argues that the steps in the amendment process taken on May 24 and 25 were not sufficient to render the Amended Sign Ordinance legally pending. For purposes of the pending ordinance doctrine, "[a]n ordinance is legally pending when the governing body has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning." *Id.* at 546. Here, Beaufort County satisfied both requirements before Adams submitted its completed applications. On May 24, the council "resolved to consider" the Amended Sign Ordinance at its first reading. And, on May 25, it published its intention to hold a public hearing.

Adams, however, contends that a local council cannot "resolve to consider" an ordinance unless the relevant local planning or zoning commission has already recommended it. But, while such a recommendation is required before a South Carolina land-use ordinance can become final, Adams points to no requirement that the recommendation occur before a governing body can start the amendment process. And the *Sherman* court was clear: the governing body (here, the Beaufort County Council) is the entity that must resolve to consider the ordinance. *Id.* It did so here.

Adams suggests other supposed procedural missteps in the early amendment process. It points out, for example, that (unlike in *Sherman*) no zoning map was included in the public notice published here. But we shall not place additional requirements on municipalities trying to prevent soon-to-be-disallowed land uses. The Supreme Court of South Carolina has explicitly laid out two steps after which an ordinance is legally pending.

12

*Id.* Both were met here. We thus agree with the district court that the Amended Sign Ordinance was legally pending in South Carolina when Adams submitted its applications on May 27 and June 1. *Adams Outdoor*, 2023 WL 1801827, at *5.

Second, Adams proposes two threshold requirements that it would have us impose before the pending ordinance doctrine could apply: that the permits must relate to a newly annexed area, and that the pending ordinance must prohibit a previously permitted use. It is true, as Adams points out, that *Sherman* concerned a newly annexed area in which billboards were not previously permitted. 273 S.C. at 545. But Adams confuses descriptive context for prescriptive mandate. The Supreme Court of South Carolina never suggested that those facts were necessary to its disposition or to the application of the pending ordinance doctrine. And we have previously applied the pending ordinance doctrine when neither of Adams's suggested requirements were met. *See Covenant Media*, 493 F.3d at 426–27, 438. We thus decline to impose such requirements here.

Finally, Adams argues that we should take the April 27 date when it submitted its incomplete applications as the operative date of submission for the completed applications as well. But we are loath to impose on municipalities a rule that the submission of an incomplete application would allow a submitter to guarantee that a later application would be subject to a particular ordinance. That is not to say that a municipality can delay application determinations indefinitely while considering a potential amendment. *See id.* at 431. Here, however, Beaufort County notified Adams that its applications were incomplete less than a month from when it received them. This turnaround, while not a model of alacrity, nonetheless passes muster.

13

We agree with the district court, therefore, that Beaufort County's decision to deny the permits under the Amended Sign Ordinance was permissible under South Carolina's pending ordinance doctrine. Having so determined, we turn to questions of jurisdiction.

C.

We lack jurisdiction over many of Adams's challenges in the remaining claims because they are moot. These claims largely take aim at provisions of the Old Sign Ordinance that were changed in the Amended Sign Ordinance. The district court went paragraph-by-paragraph through Adams's complaint and identified which of the challenged provisions of the Old Sign Ordinance were "significantly altered" in the Amended Sign Ordinance. *See Adams Outdoor*, 2023 WL 1801827, at *3–5. Adams does not critique the district court's determinations here, and indeed the district court has categorized the provisions correctly. We therefore adopt its delineation and start by considering as a group the provisions the district court identified as substantially modified in the Amended Sign Ordinance.

The district court rightly held that Adams's challenges regarding those changed provisions were moot. Injunctive and declaratory challenges to repealed ordinances become moot if there is little practical likelihood that the ordinance will be reenacted. *See Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001). Here, Adams has not alleged any such likelihood. Its equitable challenges against changed provisions thus fail to present a live case or controversy eligible for review. *See id.* The amended provisions can no longer be enforced against Adams, and Adams needs no prospective relief from provisions no longer in effect.

14

Retrospective damages claims are, of course, treated differently. If a plaintiff suffered harm from a provision already enforced against him, it is cold comfort that the provision was subsequently repealed. *See Covenant Media*, 493 F.3d at 429 n.4. But that exception applies only to provisions actually enforced against the plaintiff. Here, on the other hand, the Old Sign Ordinance was never enforced against Adams. As we have noted, Adams's applications were properly denied under the Amended Sign Ordinance instead.

In short, Adams is trying to challenge provisions that no longer exist and that were never used against it. "Federal courts have no power to hear moot cases," *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006), and the proper disposition of moot claims is to dismiss them for lack of jurisdiction. We therefore affirm the district court's dismissal of challenges to provisions no longer in effect.

## D.

After disposing of challenges to provisions that were amended, we are left only with challenges to the few provisions that remain consistent between the Old Sign Ordinance and the Amended Sign Ordinance. But Adams has not established that any of those remaining provisions have adversely affected its business activities. We thus agree with the district court that Adams does not have standing to challenge them and affirm the district court's dismissal of these challenges for lack of jurisdiction as well.

Standing is a threshold requirement of Article III justiciability. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000) (en banc). It ensures that the party in front of us is "the proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *Warth v.*

15

*Seldin*, 422 U.S. 490, 518 (1975)). To establish standing, a plaintiff must plead facts that allege (1) that he has suffered or imminently will suffer an injury-in-fact which is (2) causally connected to the challenged provisions and (3) capable of being redressed by a favorable outcome in court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

A party must demonstrate standing to challenge each provision it opposes. *See FW/PBS*, 493 U.S. at 231–33. We must thus march provision-by-provision through those challenges remaining after the mootness dismissals. We conclude that Adams has not been injured by any of them. In doing so, we find that the district court properly analyzed each and every one.

Start with the temporary sign rules in ASO § 5.6.60. These provisions concern signs posted for limited periods of time—often around thirty days. *See* ASO § 5.6.60(C). Adams's signs, in contrast, are permanent. It argues on appeal that its signs could be considered "temporary" because the messages on them change from time to time. *See* Appellant's Opening Br. 41. But Adams has not evinced any intention to construct signs that are subject to the temporary-sign time limits. In each of Adams's denied billboard applications, when Adams was asked whether its signs were temporary it said "no." J.A. 67, 70, 73, 76, 79, 82, 85, 88, 91, 94, 97. These provisions do not adversely affect Adams's operations, and so it has no standing to challenge them.

Turn to the sign types covered in ASO § 5.6.40. This provision contains two tables. Table A provides rules that Adams challenges regarding directional signs and sidewalk signs. Directional signs must be located within thirty feet of an entrance to a parking lot.

16

Adams has not alleged it has any such signs, and so we cannot see how their regulation would have any impact at all on Adams, let alone an injurious one. As for sidewalk signs, Adams's billboards are not located on sidewalks, so those regulations are likewise inapplicable. Table B fares no better. It governs yard signs up to six square feet and various signs attached to buildings. But Adams manages large commercial billboards that stand atop freestanding monopoles. Nowhere in the complaint does Adams purport to have any interest in signs attached to buildings or signs small enough to post in yards.

Next, move to ASO § 5.6.30, which lays out general requirements that apply to all signs in Beaufort County. Adams argues against two specific subsections: ASO § 5.6.30(D)(4), which requires that signs located in "buffers" be positioned to have the least impact on trees, and ASO § 5.6.30(E), which lays out design standards. This provision at least applies to billboards like Adams's. But standing is not established, as Adams claims, simply because Adams "must comply with" this provision. *See* Appellant's Opening Br. 43. Standing demands an injury-in-fact, and Adams has failed to show that it was ever injured (or expects to be injured) by this provision. Adams's complaint never alleges that any of its signs are in a buffer zone or affected by the least-impact-on-trees requirement. And there is no indication that any of Adams's signs have been rejected because of the design standards or that Adams has any desire to erect any such design-nonconforming signs. In short, Adams has not alleged that it was injured by these provisions either and therefore lacks standing to challenge them alongside the others.

In addition to challenging the determinations of specific provisions, Adams makes sweeping challenges to the district court's entire standing analysis. First, it argues that

17

Beaufort County did not move below to dismiss any of Adams's claims based on a lack of standing. But that is of no moment. Federal courts are required to ensure that they have jurisdiction and must address standing problems even when the parties do not raise them. *See Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020).

Second, Adams contends it has pleaded "sufficient harm to adequately allege standing to challenge the [Old Sign Ordinance] as a whole" based on the supposed chilling effect of that ordinance. *See* Appellant's Opening Br. 40. But the Old Sign Ordinance governs no more, and any challenges to it are moot per our discussion above.

Finally, Adams argues that it should be allowed to lodge overbreadth challenges even to provisions that have caused it no injury. It is true that overbreadth claims are subject to a relaxation of the "traditional rules of standing," *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)), but not in the manner that Adams suggests. The relaxation is to the rule that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others." *Broadrick*, 413 U.S. at 610. But the person seeking to challenge an overbroad statute must still have been subject to the statute to have standing. Hence a nude-dancing establishment that had been penalized for violations of a North Carolina statute prohibiting lewd dancing could challenge that statute as overbroadly burdening protected activities such as ballet and theater, even if the dancing at the establishment did not qualify for constitutional protections. *See Giovani Carandola*, 303 F.3d at 512. But the challenge to that statute still

18

had to be lodged by a party injured by it. It would not be subject to a challenge, say, by a restaurant with no dancing at all.

Here, Adams is more like the restaurant. It seeks to challenge as overbroad sign provisions that do not affect its business. Even overbreadth challenges do not stretch standing to encompass those who have suffered no injury at all. Adams has suffered no such injury because of the provisions discussed herein, and we therefore affirm the district court's dismissal for lack of jurisdiction regarding Adams's challenges to those provisions.

E.

Although we agree with the district court's determination that it lacked jurisdiction to hear these claims, the district court erred when it entered that dismissal with prejudice. "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). We thus remand the case with instructions that the district court make clear that its jurisdictional dismissals are dismissals without prejudice.

III.

We note, in conclusion, that the district court did a fine job with this litigation. This case belongs in state court for at least three reasons. One, billboards are plainly related to the historic state interest in "land-use planning and development." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 502 (1981). Two, the state courts themselves are wrestling with many of the state and federal questions presented to us here. Three, the jurisdictional

19

hurdles faced by Adams, both individually and collectively, counsel against federal judicial review. For the reasons noted, plaintiff's claims are remanded with directions that they be dismissed in accordance with the conditions announced herein.

*REMANDED WITH DIRECTIONS*.